Docket Nos. 81195, 82042 cons.–Agenda 11–January 1997.

JOE MURNEIGH, Appellee, v. TERRANCE GAINER, Director of State Police, 
et al
., Appellants.

Opinion filed September 18, 1997.

JUSTICE McMORROW delivered the opinion of the court:

In this appeal we determine the constitutionality of a statutory provision and two regulations which provide for the collection of blood specimens from certain convicted sex offenders. These provisions require Illinois courts to enter orders for the collection of blood from certain convicted sex offenders and to enforce such orders by the exercise of the court's contempt power. The circuit court held that these provisions violate the separation of powers clause of the Illinois Constitution of 1970.

Plaintiff, Joe Murneigh, is a former prisoner of the Illinois Department of Corrections who was convicted in 1973 of rape and deviate sexual assault. Defendants are the Director of State Police, the former Director of Corrections, and the warden of Shawnee Correctional Center.

This is the second appeal arising from plaintiff's refusal to provide a blood specimen to defendants pursuant to section 5–4–3 of the Unified Code of Corrections (730 ILCS 5/5–4–3 (West 1994)). See 
Doe v. Gainer
, 162 Ill. 2d 15 (1994). Plaintiff brought the instant action to challenge the constitutionality of section 5–4–3(i) of the statute and the two implementing regulations found at 20 Ill. Adm. Code §§1285.30(d), (f) (1994). According to plaintiff, section 5–4–3(i) and the two regulations contravene the separation of powers provision of the Illinois Constitution. Ill. Const. 1970, art. II, §1. He further contends that because this statutory and administrative scheme for collecting blood samples was enacted after his conviction for sexual offenses, defendants' attempts to retain him in prison beyond his parole or release date because of his refusal to provide the blood sample deprive him of his due process rights and also violate the prohibition against 
ex post facto
 laws.

The circuit court granted summary judgment in plaintiff's favor on the ground that section 5–4–3(i) and regulations 1285.30(d) and (f) infringe upon the judiciary's inherent power of contempt, and therefore violate the separation of powers clause of the Illinois Constitution. Accordingly, the court enjoined defendants from further attempts to seek a blood sample from defendant and ordered his previously taken blood sample expunged. Defendants, invoking Rule 302(a) (134 Ill. 2d R. 302(a)), then brought this direct appeal from the court's order declaring section 5–4–3(i) and the administrative regulations invalid. We affirm the judgment of the circuit court.

BACKGROUND

In 1973, plaintiff was sentenced to an indeterminate term of 20 to 60 years following his convictions for rape and deviate sexual assault. In 1989, the General Assembly enacted section 5–4–3 of the Unified Code of Corrections, which established the statutory framework for the creation of a deoxyribonucleic acid (DNA) data bank for the collection and genetic marker grouping analysis of blood samples from certain sex offenders and sexually dangerous persons. See 730 ILCS 5/5–4–3 (West 1994).

Under this statute, the Illinois Department of State Police is charged with the responsibility of collecting, analyzing, and exchanging with other law enforcement agencies DNA information derived from blood specimens taken from certain convicted sex offenders. The statute classifies persons subject to the blood collection requirement into two groups: (1) sex offenders and sexually dangerous persons who have been convicted on or after the effective date of the statute (see 730 ILCS 5/5–4–3(a)(1) (West 1994)) and (2) sex offenders or sexually dangerous persons who were convicted of a sex offense before the effective date of the act and who are “presently confined as a result of such conviction *** or [are] presently serving a sentence of probation, conditional discharge or periodic imprisonment as a result of such conviction.” 730 ILCS 5/5–4–3(a)(3) (West 1994). Offenders who are convicted and sentenced on or after the effective date of the blood collection statute must, pursuant to court order, provide a blood specimen within 45 days after sentencing. 730 ILCS 5/5–4–3(b) (West 1994). Offenders who were convicted before the effective date of the Act and are still in the prison system are required to provide a specimen “prior to final discharge, parole, or release” from prison. 730 ILCS 5/5–4–3(c) (West 1994). In 1992, amendments to the statute were enacted, including the addition of the contempt provision, section 5–4–3(i). The contempt provision is the subject of the instant appeal.

To resolve the issues in the case at bar we examine the chronological events relevant to plaintiff's two separate lawsuits which challenged different provisions of the blood collection requirements set forth in section 5–4–3. The controversy began in November 1992, when the medical staff at Shawnee Correctional Center attempted to satisfy sections 5–4–3(a)(3) and (c) of the statute by obtaining a blood specimen from plaintiff, who was then eligible for parole from his 1973 convictions. Plaintiff refused to cooperate. Thereafter, he filed a 
pro se
 action in which he challenged the constitutionality of sections 5–4–3(a)(3) and (c) of the Unified Code of Corrections (730 ILCS 5/5–4–3(a)(3), (c) (West 1994)). See 
Doe v. Gainer
, 162 Ill. 2d 15 (1994). According to plaintiff, these two provisions denied him due process of law and constituted 
ex post facto
 punishment because they operated to lengthen his original sentence or delay his release on parole until he provided the blood sample. He requested declaratory and injunctive relief.

The record indicates that defendants, in their answer to plaintiff's lawsuit in the circuit court in 
Doe
, admitted that sections 5–4–3(a)(3) and (c) authorized prison officials to retain plaintiff in prison until he cooperated with the blood collection process. According to defendants, however, such a result was not unconstitutional as violating due process or 
ex post facto
 prohibitions. The circuit court disagreed, and held that the above provisions unconstitutionally allowed the State to detain plaintiff in prison beyond the date of his anticipated release or parole as long as he refused to comply with prison officials' request that he provide a blood specimen for the state data bank. The operation of such a law, according to the trial court, was to impose an 
ex post facto
 punishment upon previously convicted prisoners, like plaintiff, who declined to provide blood specimens voluntarily. Because the prisoner would be subject to remaining in prison or being denied parole as long as he refused to comply with the statute, the effect of the provisions in issue would be to retroactively impose an additional punishment for the original crime. Consequently, the trial court declared sections 5–4–3(a)(3) and (c) unconstitutional and enjoined their enforcement against plaintiff.

The State appealed to this court. 
Doe v. Gainer
, 162 Ill. 2d 15 (1994). We reversed the judgment of the trial court on the ground that sections 5–4–3(a)(3) and (c) could be construed in a constitutional manner. 
Doe
, 162 Ill. 2d at 20. We held that section 5–4–3(c), which required that prisoners in plaintiff's situation provide a blood specimen before being released, discharged, or paroled from prison, was not to be construed as an 
enforcement
 mechanism, as the trial court had done, but should instead be viewed as a 
timing device
 specifying when the blood sample was to be provided. 
Doe
, 162 Ill. 2d at 20-21. We held that the provisions in issue did not authorize prison officials to extend prison terms, deny parole, or delay release of those prisoners who refused to voluntarily provide blood specimens. See 
Doe
, 162 Ill. 2d at 21. 
Cf.
 
Gilbert v. Peters
, 55 F.3d 237 (7th Cir. 1995) (holding that the Illinois blood collection requirements could be construed in a constitutional manner despite an 
ex post facto
 challenge because the statute was not punitive in nature and the sanctions for failure to comply would be internal administrative punishments such as loss of “good time” or other disciplinary measures). Notably, in 
Doe
, we expressly declined the State's request that we consider section 5–4–3(i), the contempt provision at issue in the case at bar, as the means by which the State can enforce the blood collection requirement.

After this court's decision in 
Doe
, the Illinois State Police again sought to obtain a blood sample from plaintiff, this time invoking the contempt provision of section 5–4–3(i). Section 5–4–3(i) provides:

“A person ordered by the court to provide a blood specimen shall cooperate with the collection of the specimen and any deliberate act by that person intended to impede, delay or stop the collection of the blood specimen shall be punishable as contempt of court.” 730 ILCS 5/5–4–3(i) (West 1994).

Section 1285.30(d) of the Administrative Code provides:

“In the event no court order has been issued at the time of sentencing requiring the qualifying offender to provide a sample, the designated agency shall request the State's Attorney of the court of conviction or the county in which the offender is located to request the court to issue such an order. The court shall issue an order requiring the offender to provide the sample.” 20 Ill. Adm. Code §1285.30(d) (1994).

Section 1285.30(f) of the Administrative Code states:

“A general order issued under the administrative authority of the chief judge of the circuit court of proper jurisdiction is sufficient to satisfy the court order provisions of these rules. In the event such an order exists and is valid with respect to the qualifying offender, the State's Attorney need not seek an individualized order.” 20 Ill. Adm. Code §1285.30(f) (1994).

Plaintiff refused defendants' second request for a blood specimen. In November 1994, plaintiff filed his second lawsuit, which is the subject of the instant appeal. He alleged that, once again, defendants were threatening to prevent his release on parole unless he provided a blood specimen for inclusion in the data bank. According to plaintiff's complaint, defendants were invoking section 5–4–3(i) and the two implementing regulations as authorizing the “continued incarceration of inmates past their release dates for failure to comply with the blood testing requirement.” In so doing, plaintiff charged, defendants were attempting, by using the contempt provision and regulations, to achieve the same unconstitutional result of delaying his release date from prison that they were unable to achieve by their original construction of sections 5–4–3(a) and (c) in 
Doe v. Gainer
, 162 Ill. 2d 15 (1994). Consequently, plaintiff sought declaratory and injunctive relief on the ground that section 5–4–3(i) of the Code is unconstitutional. In count I of his complaint, plaintiff alleged that section 5–4–3(i) and the implementing regulations were 
ex post facto
 laws. In count II, plaintiff alleged that the same statutory provision and regulations violated his right to due process of law. In count III, he alleged that the provision and implementing regulations violated the separation of powers doctrine embodied in the Illinois Constitution.

The parties filed cross-motions for summary judgment. Defendants argued, 
inter alia
, that plaintiff's challenge to section 5–4–3(i) was barred by 
res judicata
 because of this court's ruling in 
Doe
. In addition, defendants contended that the cause was moot because plaintiff had given a blood sample on April 4, 1995, and was subsequently granted parole. Finally, defendants disputed plaintiff's assertion that section 5–4–3(i) was unconstitutional as violating separation of powers.

The circuit court granted plaintiff's motion to file an amended complaint in light of the fact that at the time of defendants' motion to dismiss, plaintiff had provided a blood specimen and had been offered parole. The amended complaint retained the same legal arguments but requested that the blood specimen, given under threat of the contempt sanction found in section 5–4–3(i) and the two administrative regulations, be expunged.

In ruling upon the parties' cross-motions for summary judgment on the amended complaint, the trial court held that section 5–4–3(i) and its implementing regulations violated the separation of powers doctrine of the Illinois Constitution because they “vitiate[d] the discretion that is inherent in the judiciary in the exercise of the contempt power.” Consequently, the court ordered defendants to expunge plaintiff's blood sample and take no further action against him to obtain another sample. The court declined to address or decide the other two constitutional claims alleged in count I (
ex post facto
 law) and count II (violation of due process). Defendants then brought this direct appeal, which we granted (134 Ill. 2d R. 603).

ANALYSIS

Because this appeal arises from an order granting summary judgment on issues of law, our standard of review is 
de novo
. 
E.g.
, 
Busch v. Graphic Color Corp.
, 169 Ill. 2d 325, 333 (1996). The party challenging the constitutionality of legislation, in this case plaintiff, bears the burden of establishing that the provision in issue is unconstitutional, overcoming the presumption of constitutionality. 
E.g.
, 
Doe
, 162 Ill. 2d at 19.

As a preliminary matter, we consider defendants' assertion that plaintiff's complaint is moot because he provided a blood specimen and was consequently released from prison. We note that the trial court granted plaintiff's motion to expunge his specimen from the records and further enjoined defendants from seeking another blood sample from him. Therefore, the issues are not moot as to plaintiff. Nor do we believe it would be appropriate to dispose of plaintiff's claims on mootness grounds where the threatened harm to a group of prisoners in plaintiff's position is likely to recur and the where the issue presents questions of public interest. See 
In re E.G.
, 133 Ill. 2d 98, 105-06 (1989); 
People ex rel. Wallace v. Labrenz
, 411 Ill. 2d 618, 622 (1952).

I. 
Res Judicata

Defendants argue that plaintiff's challenge to section 5–4–3(i) is barred by the doctrine of 
res judicata
 because the instant action involves the same parties, facts, and issues that were before this court in defendants' prior appeal in 
Doe
, 162 Ill. 2d 15. According to defendants, plaintiff could have challenged the contempt provisions at issue in the instant case at the same time that he raised the 
ex post facto
 and due process challenges to the statutory requirement that he provide a blood specimen before his release from prison. Because plaintiff did not include the contempt provisions in his prior challenge to sections 5–4–3(a)(3) and (c), defendants contend, principles of 
res judicata
 bar plaintiff's claim in the case at bar.

We reject defendants' argument. 
Res judicata
 is an equitable doctrine designed to prevent the multiplicity of lawsuits between the same parties and involving the same facts and the same issues. See, 
e.g.
, 
Torcasso v. Standard Outdoor Sales, Inc.
, 157 Ill. 2d 484, 490-91 (1993). Under this doctrine, a final judgment on the merits of a cause operates as a bar to subsequent litigation of the same claim, demand, or cause of action between the same parties. 
Torcasso
, 157 Ill. 2d at 490. In the case at bar, defendants' attempt to invoke 
res judicata
 rests on the assumption that the operative facts and issues in 
Doe
 and in the instant case are the same. That assumption is erroneous. The parties are the same, but the facts giving rise to the separate suits do not arise from a single incident. Moreover, the controlling legal issues differ.

At the time plaintiff filed his first 
pro se 
petition challenging sections 5–4–3(a) and (c) of the Act, he had not been subjected to or threatened with contempt proceedings pursuant to section 5–4–3(i). Instead, the basis of defendants' attempt to keep him in prison past his anticipated parole date was language in section 5–4–3(c), which defendants interpreted as authorizing prison authorities to retain prisoners in plaintiff's circumstances indefinitely, past their anticipated release dates, as long as they refused to cooperate in giving blood samples. After this court's opinion in 
Doe
, which prevented defendants from keeping plaintiff in prison past his departure date for purposes of blood collection, defendants again sought a blood sample from plaintiff. This subsequent attempt to obtain plaintiff's blood sample was predicated on the contempt provision of section 5–4–3(i) and the two implementing regulations. In light of the defendants' renewed threat to keep plaintiff in prison past his anticipated release or parole date until he gave a blood specimen, plaintiff filed his second suit to challenge the contempt provision and administrative regulations. The circuit court again ruled in plaintiff's favor, but on different grounds from those present in the first lawsuit. Therefore, defendants are incorrect in their assertion that the facts and issues in both lawsuits are the same, for purposes of 
res judicata
. See 
Mistretta v. Village of River Forest
, 2 Ill. App. 3d 102, 104 (1971) (“Where facts are alleged in a second complaint which arose after the termination of the prior litigation and the issue in the second litigation thus differs from the first” 
res judicata
 does not bar the second suit); accord 
O'Connor v. Greer
, 55 Ill. App. 3d 253, 261 (1977).

We also reject defendant's 
res judicata
 argument because in the prior appeal we expressly declined to resolve whether section 5–4–3(i) was unconstitutional. We stated,

“Both parties have attempted to raise on appeal the constitutionality of section 5–4–3(i) of the Code, which provides for a finding of contempt of court against any prisoner ordered by the court to provide a blood sample who refuses to cooperate. (730 ILCS 5/5–4–3(i) (West 1992).) However, we need not decide that issue here. While the State has argued that section 5–4–3(i) is the valid enforcement mechanism of section 5–4–3, and defendant has responded, the trial court never ruled on that section. The trial court's order was limited to sections 5–4–3(a)(3) and (c). 
Moreover, the State appealed only the constitutionality of sections 5–4–3(a)(3) and (c) in its notice of appeal, and not the constitutionality of section 5–4–3(i).
 
The validity of section 5–4–3(i) is not before this court
.” (Emphasis added.) 
Doe
, 162 Ill. 2d at 22.

Neither the trial court nor this court determined the constitutional validity of section 5–4–3(i) in the first lawsuit because the parties believed that sections 5–4–3(a)(3) and (c) were dispositive on the question of whether prison officials were authorized to retain plaintiff in prison until he gave a blood specimen. It was not until this court's opinion in 
Doe
 that the parties were apprised that the statutory requirement of providing blood samples before a prisoner's release from prison operated as a “timing device” instead of an enforcement mechanism. The
 Doe
 opinion deliberately left open the question whether section 5–4–3(i) was a constitutionally valid enforcement provision, which is the issue now directly before this court as a result of defendants' instant appeal.

In light of the above, defendants have not established that the precise question, or point, involving the constitutionality of section 5–4–3(i), was or should have been considered in determining the former suit. See 
Torcasso
, 157 Ill. 2d at 491. 
Res judicata
 should not be applied to preclude a party from litigating the central issue in a second suit where such issue was not adjudicated in the first suit, because it was not considered essential to the disposition of the issues then pending before the court. Accordingly, defendants' attempt to bar plaintiff's constitutional challenges by a strained application of 
res judicata
 is unavailing.

II. Separation of Powers

In the case at bar, the circuit court held that section 5–4–3(i) and the two implementing regulations violated separation of power principles by vitiating the discretion that is inherent in the judiciary in the exercise of its contempt power. In their appeal to this court, defendants contend that these provisions do not violate separation of powers because the legislative regulation of the contempt power in the instant case does not unduly restrict the courts' inherent contempt power. Instead, according to defendants, section 5–4–3(i) and the regulations 
increase
 the judiciary's contempt power, by facilitating the courts' exercise of such power.

In response to defendants' arguments, plaintiff asserts that the court correctly invalidated section 5–4–3(i) and the two implementing regulations because these provisions compel the judiciary to enter orders that are administrative in nature and then to punish violations of such orders with contempt of court. According to plaintiff, violations of administrative orders are not punishable by contempt under Illinois law. Moreover, plaintiff states, the mandatory nature of the provisions in issue vitiates the courts' inherent discretion in matters concerning the exercise of their contempt power. For these reasons, plaintiff contends, section 5–4–3(i) and the two regulations violate the separation of powers doctrine.

The Illinois Constitution provides that the legislative, executive, and judicial branches of government are separate and that no branch shall “exercise powers properly belonging to another.” Ill. Const. 1970, art. II, §1. The separation of powers doctrine exists to insure that each of the three branches of government retains its own sphere of authority, free from undue encroachment by the other branches. See, 
e.g.
, 
City of Waukegan v. Pollution Control Board
, 57 Ill. 2d 170, 175 (1974); 
People ex rel. Hansen v. Phelan
, 158 Ill. 2d 445, 451 (1994). The legislative function of enacting general laws and the executive function of enforcing those laws is complemented by the judicial function of interpreting and applying laws in specific cases. A unique and integral part of the judicial role in resolving specific controversies is the contempt authority, which imbues the judiciary with the power to punish certain types of conduct, 
i.e.
, acts which significantly interfere with the dignity of the court or acts which defy court orders. See, 
e.g.
, 
In re G.B
., 88 Ill. 2d 36, 41 (1981);
 In re Baker
, 71 Ill. 2d 480 (1978); R. Johnston & K. Bry, 
An Overview of Illinois Contempt Law: A Court's Inherent Power And the Appropriate Procedures and Sanctions
, 26 J. Marshall L. Rev. 223 (1993).

It is true, as defendants note, that the constitutional requirement of separation of powers does not contemplate an entirely separate and distinct exercise of authority by the executive, legislative, and judicial branches of government. See, 
e.g.
, 
City of Waukegan
, 57 Ill. 2d at 174. The legislature may enact laws involving judicial practice if they do not infringe unduly upon the judiciary's inherent powers. See 
People v. Davis
, 93 Ill. 2d 155, 161 (1982). Indeed, this court has recognized that not all legislative attempts to regulate the judicial power of contempt violate separation of powers principles. See 
People ex rel. Rusch v. White
, 334 Ill. 465, 484-85 (1929); see also 
In re Baker
, 71 Ill. 2d 480, 484 (1978) (legislature cannot restrict court's contempt power but may provide a statutory alternative for court to enforce, at its discretion).

In a recent opinion, we reiterated that “[t]he power to punish for contempt does not depend on constitutional or legislative grant.” 
People v. Warren
, 173 Ill. 2d 348, 370 (1996). Because the power of contempt is inherent in the judiciary, and vital to its authority, the other branches of government may not 
require
 judges to exercise their discretionary authority to punish for contempt (see 
In re Marriage of Metz
, 233 Ill. App. 3d 50, 57 (1992)), or tell the judiciary the manner in which it will exercise such power (
e.g
., 
People v. Joseph
, 113 Ill. 2d 36, 42 (1986)). When the legislature encroaches upon a fundamentally judicial prerogative, this court has not hesitated to protect the court's authority. 
Joseph
, 113 Ill. 2d at 43.

Section 5–4–3(i) states that a person “ordered by the court to provide a blood specimen shall cooperate with the collection of the specimen and any deliberate act by that person intended to impede, delay or stop the collection of the blood specimen 
shall be punishable as contempt of court
.” (Emphasis added.) 730 ILCS 5/5–4–3(i) (West 1994).

Section 1285.30(d) of the Administrative Code provides:

“In the event no court order has been issued at the time of sentencing requiring the qualifying offender to provide a sample, the designated agency 
shall
 request the State's Attorney of the court of conviction or the county in which the offender is located to request the court to issue such an order. The court 
shall
 issue an order requiring the offender to provide the sample.” (Emphasis added.) 20 Ill. Adm. Code §1285.30(d) (1994).

Section 1285.30(f) of the Administrative Code provides:

“A general order issued under the administrative authority of the chief judge of the circuit of proper jurisdiction is sufficient to satisfy the court order requirements of these rules. In the event such an order exists and is valid with respect to the qualifying offender, the State's Attorney need not seek an individualized order.” (Emphasis added.) 20 Ill. Adm. Code §1285.30(f) (1994).

These three provisions collectively set forth a scheme for judicially enforcing the blood collection requirement against incarcerated sex offenders. According to plaintiff, this scheme violates the separation of powers clause of the Illinois Constitution in that the scheme requires the courts to issue orders that are administrative in nature, which is not a proper function of the judiciary. In addition, as the circuit court found, the provisions usurp the courts' discretion in exercising an inherently judicial power by requiring the courts to punish violations of such orders through the contempt power. We initially address the latter issue.

A

Section 5–4–3(i) and the first regulation, section 1285.30(d) of the Administrative Code, set forth the procedure by which the State Police can procure blood specimen from noncooperative prisoners through use of the courts. This procedure for obtaining and enforcing court orders to procure prisoners' blood samples is couched in mandatory terms. Administrative regulation 1285.30(d) compels the judiciary to issue compliance orders against prisoners whenever requested by the State. If such orders are then violated by a prisoner's deliberate refusal to cooperate in providing a blood sample, section 5–4–3(i) provides that the sanction for such violation shall be contempt of court.

Defendants do not dispute that the word “shall” in section 5–4–3(i) and regulation 1285.30(d) is mandatory. Nor do defendants suggest that these two provisions should be interpreted as merely permissive. 
Cf. People v. Davis
, 93 Ill. 2d 155, 162 (1982) (construing the word “shall” as permissive in the context of a statute requiring, as a prerequisite for felony sentencing, that the court obtain and consider written presentence report). However, defendants suggest that the mandatory nature of section 5–4–3(i) and regulation 1285.30(d) does not offend separation of powers principles. Defendants analogize the instant case to other cases in which this court has rejected constitutional challenges to legislation that limits judicial discretion. Specifically, defendants rely on 
People v. Dunigan
, 165 Ill. 2d 235 (1995), and 
People ex rel. Carey v. Chrastka
, 83 Ill. 2d 67 (1980), both of which involved provisions requiring enhanced sentencing for habitual offenders.

In both 
Dunigan
 and 
Chrastka
, the offenders were subjected to mandatory enhanced sentencing upon their convictions for the qualifying offenses. The defendants raised separation of powers challenges to the sentencing provisions, which required the courts to impose the increased penalty if the prosecutor requested the enhancement and further established the factual predicates necessary to impose the increased penalty. In both cases, this court rejected the offenders' argument that the mandatory sentencing provisions violated separation of powers principles by limiting the courts' discretion in imposing sentences. According to defendants in the case at bar, cases such as 
Dunigan
 and 
Chrastka
 support their argument that the mandatory nature of the instant scheme does not render it unconstitutional.

We do not agree that the enhanced sentencing cases are persuasive authority for deciding the separation of powers issue in the instant case. This court, in 
Chrastka
, recognized that the legislature is authorized to define criminal offenses and sentences. Such legitimate legislative authority does not usurp the sentencing function of the judiciary. See 
Chrastka
, 83 Ill. 2d at 79. Unlike the mandatory enhanced sentencing provisions under review in 
Dunigan
 and 
Chrastka
, however, section 5–4–3(i) is not akin to a statutory sentencing provision for a specific offense. In fact, we note that a prisoner's refusal to give blood is not criminalized by section 5–4–3 and carries no sentence. While the legislature may specify mandatory sentences without violating the separation of powers doctrine, the legislature lacks similar authority to specify mandatory contempt of court sanctions. The inherent power of the court to maintain the dignity of the court or to enforce its own orders in a specific judicial proceeding is unlike the lawmaking power of the legislature to proscribe certain types of conduct as crimes and to determine sentences for such crimes. Accordingly, the holdings and reasoning of
 Dunigan
 and 
Chrastka
 are inapposite to the issues before the court in this appeal.

We conclude that the circuit court in the case at bar correctly determined that section 5–4–3(i) and the two regulations vitiate the court's discretion in exercising its contempt power. See, 
e.g.
, 
People v. Joseph
, 113 Ill. 2d 36, 42 (1986) (legislative branch lacks power to specify how the judicial power shall be exercised under a particular set of circumstances);
 In re Marriage of Metz
, 233 Ill. App. 3d 50, 57 (1992) (court's discretion includes the power not to impose contempt sanctions). The provisions under review remove the judiciary's inherent discretion by directing that the compliance orders shall be entered and, if violated, that such orders shall be punishable by contempt of court.

B

The second separation of powers problem, according to plaintiff, is that the courts are required to wield a “rubber stamp” in issuing orders that are administrative in nature. As such, the scheme embodied in section 5–4–3(i) and regulations 1285.30(d) and (e) requires the Illinois judiciary to exercise powers belonging to the executive branch of government. This vesting of an executive function in the judiciary is prohibited by the separation of powers clause of the Illinois Constitution. Moreover, plaintiff contends, the violation of an administrative order is not punishable by contempt of court because the contempt power is reserved to the courts in their judicial function, and the administrative orders in issue are not judicial in character.

We agree with plaintiff's arguments. The provisions under review conscript the courts of Illinois into the service of an essentially administrative program for the collection and analysis of blood samples for inclusion in the state's data bank. The courts' mandatory participation by the entry of compliance orders and the enforcement of the orders with the contempt power does not advance a judicial prerogative. Instead, judicial participation in the administrative scheme promotes an executive purpose, 
viz.
, maintaining a blood data bank for law enforcement purposes. As this court has often noted, the Illinois Constitution expressly prohibits one branch of government from exercising the functions of another. See
 Administrative Office of the Illinois Courts v. State & Municipal Teamsters, Chauffeurs & Helpers Union, Local 726
, 167 Ill. 2d 180 (1995); 
People v. Jackson
, 69 Ill. 2d 252, 256 (1977); see also 
Fields Jeep-Eagle, Inc. v. Chrysler Corp
., 163 Ill. 2d 462, 479 (1994) (invalidating statute as improper delegation of legislative or administrative decision-making to judiciary); 
cf.
 
In re General Order of October 11, 1990
, 256 Ill. App. 3d 693 (1993) (holding that juvenile court's general order which prescribed procedures for treatment of injured or sick minors in custody of officers was an invalid exercise of legislative power by the judiciary). We believe that the challenged provisions under review attempt to confer upon the judiciary a ministerial or administrative duty to process blood collection demands. Consequently, they violate separation of powers principles by assigning nonjudicial tasks to the courts of Illinois.

The ministerial nature of the courts' role in the blood collection process is illustrated by the two administrative regulations, sections 1285.30(d) and (f) of the Administrative Code. Section 1285.30(d), as previously noted, directs the courts to enter compliance orders requiring sex offenders to produce blood samples in all cases in which the State's Attorney seeks such orders. Section 1285.30(f), the second regulation in issue, further underscores the ministerial character of the blood collection procedures. This regulation provides, in pertinent part, that a “general order issued under the administrative authority of the chief judge” shall be sufficient to satisfy the “court order requirements of these rules.” If the general administrative order “exists and is valid with respect to the qualifying offender, the State's Attorney need not seek an individualized order.” 20 Ill. Adm. Code §1285.30(f) (1994).
(footnote: 1)
 By its terms, regulation 1285.30(f) approves a general administrative order, the purpose of which is to eliminate the need for individualized court orders. The regulation permits the “court order” requirement of the blood collection scheme to be satisfied by the entry of a general order, issued in the chief judge's administrative capacity. The language of this regulation specifically recognizes that the court's entry of orders for complying with the blood collection requirement is an administrative act.

Although this court's Rule 21 (134 Ill. 2d R. 21) confers upon chief judges of the circuit courts certain administrative powers in conducting court business, we believe that regulation 1285.30(f) attempts to confer administrative authority on the judiciary for a nonjudicial purpose. The regulation's delegation of an executive function to the chief judges of the circuit courts does not comport with separation of powers principles. Even assuming, 
arguendo
, that regulation 1285.30(f) confers valid authority upon a chief judge of the circuit court to enter a general blood collection order, the violation of orders entered pursuant to such general order would not necessarily be punishable by contempt of court. Indeed, this court has held that the violation of an administrative order is 
not
 punishable by contempt of court. In 
Puterbaugh v. Smith
, 131 Ill. 199, 202 (1890), this court invalidated a statute that required courts to impose contempt sanctions on those who refused to comply with a notary's subpoena, reasoning that the legislature could not make punishable by contempt of court the violation of an order that was not judicial. See also 
People ex rel. Rusch v. White
, 334 Ill. 465, 484 (1929) (“the legislature cannot make punishable as a contempt that which cannot in the nature of things be a contempt of the authority imposing the punishment”). Further support for our conclusion may be found in an opinion of the Illinois Attorney General, which states that the violation of a court order issued in an administrative capacity does not constitute contempt of court. 1991 Ill. Att'y Gen. Op. 233, 240. See also 
City of Dayton v. Strausbaugh
, 10 Ohio Misc. 2d 29, 31, 462 N.E.2d 462, 465 (1984) (holding that contempt power may not be used to enforce court orders issued in administrative capacity on behalf of registrar of motor vehicles).

Defendants attempt to distinguish 
Puterbaugh
 on the ground that the instant case involves orders of the court rather than orders of an administrative entity. We are not persuaded by defendants' argument, however, because it is the nature of the compliance orders, rather than their form, that plaintiff challenges.

Notwithstanding the above authority which disapproves use of the contempt power to enforce administrative orders, defendants insist that the challenged provisions do not infringe upon a judicial prerogative or improperly vest nonjudicial duties in the courts. Instead, according to defendants, the legislature's regulation of the contempt power in the case at bar is a constitutionally permissible expansion of the judiciary's contempt authority. In support, defendants rely primarily on 
People ex rel. Rusch v. White
, 334 Ill. 465 (1929), a case in which this court upheld a statutory regulation of the court's contempt power against a separation of powers challenge.

In 
White
, this court considered a 1929 Chicago election law which gave county courts jurisdiction over the conduct of city elections, pursuant to a constitutional provision then in effect. The city election law provided that those who accepted their commissions as judges and clerks of election thereupon became officers of the court, who would “be liable in a proceeding for contempt for any misbehavior in their office.” 
White
, 334 Ill. at 470. A group of election judges who were found in contempt of court for misconduct during the election process challenged the validity of the statute on several grounds, including separation of powers. This court rejected the judges' argument that the legislature overstepped its bounds in providing for contempt proceedings for the misconduct of election judges. See 
White
, 334 Ill. at 484-85. In its ruling, the court observed that the legislature could expand the county courts' jurisdiction to include the monitoring of elections (
White
, 334 Ill. at 477) and that the monitoring of municipal elections involved the judicial power (
White
, 334 Ill. at 479). Significantly, this court reasoned that the judiciary's exercise of contempt sanctions against subordinate judicial officials for misconduct in the discharge of the court's business was an inherent power of the court. 
White
, 334 Ill. at 481. By this holding, the court implicitly recognized that the legislature's enactment of a contempt provision to punish the misconduct of judicial officials did nothing more than codify the court's inherent power to accomplish the same result, because the court always retains the power to discipline judicial officers. Therefore, the statutory provision redundantly conferred upon the court an inherent judicial power.

In contrast to the legislation in 
White
, the blood collection enforcement provisions in the instant case do not involve inherently judicial powers such as the discipline of judicial officers. Instead, as noted, the provisions draw upon the court's contempt power for the administrative purpose of assisting law enforcement agencies in the collection, classification, and analysis of useful data, similar to fingerprinting. While the establishment of the state's DNA data bank is laudatory, the maintaining of the bank by collecting blood specimen for use by law enforcement officials is not an inherently judicial function. Therefore, unlike the situation in 
White
, the legislature's attempt to regulate the judiciary's contempt authority in the case at bar is not in furtherance of the preexisting power of the judiciary to impose contempt sanctions in appropriate cases.

In the case at bar, the legislatively prescribed contempt sanction is not consistent with the exercise of the court's traditional and inherent power of contempt. We reiterate that the contempt power is unique to the judiciary and is not shared with the legislative and executive branches of government. 
E.g.
, 
Warren
, 173 Ill. 2d at 370. We conclude that the violation of an order that is administrative–even if cloaked with apparent judicial authority–is not the type of conduct that ordinarily is punishable by contempt of court. In the instant case, the administrative scheme for blood collection cannot punish by contempt the refusal of convicted sex offenders to voluntarily give blood samples. Although the courts are always free to consider requests for legitimate court orders and to impose contempt sanctions upon those who refuse to comply with such orders, the legislative and regulatory scheme in the case at bar contemplates use of the court system to compel compliance with orders that are administrative, and not in furtherance of a judicial function. We hold that the scheme under review subordinates the judicial prerogative to legislative and administrative dictate. Consequently, the scheme violates the separation of powers doctrine of the Illinois Constitution.

We wish to emphasize that the state's blood collection program is not jeopardized by our ruling in the case at bar. We believe that section 5–4–3 is complete and capable of being executed wholly independently of the contempt provision, section 5–4–3(i) and regulations 1285.30(d) and (f). Although we express no opinion regarding the manner in which prison officials and the State Police may collect blood samples, we note that there appear to be methods of obtaining blood samples other than using the judicial system. See 
Gilbert v. Peters
, 55 F.3d 237 (7th Cir. 1995); 
Jones v. Murray
, 962 F.2d 302 (4th Cir. 1992); see also 
Doe
, 162 Ill. 2d at 22. Therefore, we hold that the invalid provisions may be severed from the remainder of the blood collection provisions without doing violence to the intent and goals of the legislation. See 
Warren
, 173 Ill. 2d at 371-72.

We note that defendants filed a motion “to clarify jurisdiction” in this court, which was taken with the case. However, defendants concede that this court has jurisdiction over their appeal. Therefore, defendants' confusing motion to “clarify jurisdiction” is dismissed as improper. We determine that this court is vested with jurisdiction.

In conclusion, we affirm the circuit court's order invalidating section 5–4–3(i) and the two implementing regulations as violating the separation of powers doctrine. We also hold that these provisions are severable from the remaining portions of the legislation. Finally, we note that the circuit court in the instant case did not reach or resolve the issue of whether section 5–4–3(i) and the administrative regulations violate the 
ex post facto
 prohibition or violate plaintiff's due process rights. Because we agree that the separation of powers issue is dispositive in this case we similarly decline to resolve the 
ex post facto
 and due process arguments.

For the foregoing reasons we affirm the judgment of the trial court.

Affirmed
.

FOOTNOTES
1:
Defendants question plaintiff's standing to challenge this section of the Administrative Code, asserting that plaintiff was not subjected to a general administrative order of the type contemplated in section 1285.30(f). It is true that there is no indication in the record that defendants sought a generalized order or that the chief justice of the relevant circuit considered issuing one. However, we do not agree that plaintiff lacked standing to include section 1285.30(f) in his challenge to the regulatory scheme in issue. Plaintiff's standing rests on his ability to demonstrate that the application of the blood collection scheme to him, threatened or actual, caused him “some injury in fact to a legally cognizable interest.” See 
Messenger v. Edgar
, 157 Ill. 2d 162, 170-72 (1993); see also 
Greer v. Illinois Housing Development Authority
, 122 Ill. 2d 462, 494 (1988). In both the prior and current lawsuits, plaintiff demonstrated a legally cognizable injury to his constitutional rights, for purposes of standing, because defendants were allegedly delaying his release on parole because of his refusal to cooperate in the giving of a blood sample.