THIRD DIVISION

June 28, 2000

No. 1-99-2050

INTRASTATE PIPING & CONTROLS, INC., )  Appeal from the

)  Circuit Court of

Plaintiff-Appellant, )  Cook County. 

)

v. )  97 L 2606 

)

ROBERT-JAMES SALES, INC., and 
 )

BRISOL METALS, INC., )  Honorable

)  Paddy H. McNamara,

Defendants-Appellees. )  Judge Presiding.

JUSTICE WOLFSON delivered the opinion of the court:

In this case a pipe installation company sued the pipe manufacturer and the "middleman" in the sale for the cost of removing and replacing allegedly defective pipe.  The trial court granted summary judgment to both defendants. 
 To determine the rights and responsibilities of the parties we have trekked through the Uniform Commercial Code.  We conclude the buyer of the pipe is attempting to walk away from contract provisions that limit its remedies.  For that reason, we affirm the trial court.

FACTS

On March 12, 1996, Robert-James Sales, Inc. (Robert-James)
, a self-described "middleman" between pipe installers and pipe manufacturers, contacted Bristol Metals, Inc. (Bristol Metals),
 a self-described "leading manufacturer" of stainless steel pipe, to obtain price information
.
  The next day, Bristol Metals sent Robert-James a two-page fax quotation on 42 lengths of various pipe, including two-inch continuous seam welded stainless steel pipe
.  The bottom of the second page said, "THE GENERAL TERMS AND CONDITIONS SHOWN ON THE ATTACHED SHEET ARE INCORPORATED HEREIN AND MADE A PART OF THIS QUOTATION."  The quotation, as it appears in the record, did not include an attached sheet.  But, in an affidavit, Bristol Metals' Chris Blankenship (Blankenship) said Bristol Metals always included a copy of its terms and conditions with each quotation.  According to Blankenship,
 "When a purchaser accepts Bristol's Quote, Bristol then sends a Confirmation confirming the price and quantities accepted."

On March 15, 1996, Bristol Metals sent Robert-James a two-

page "ORDER CONFIRMATION" on these 42 pipe lengths.  The bottom of the second page again referred to the general terms and conditions on an attached sheet.  On the attached sheet, Bristol Metals' general terms and conditions said:

BRISTOL METALS, INC. PRODUCTS ARE WARRANTED TO BE FREE FROM MANUFACTURING DEFECTS WITHIN THE LIMITS OF APPLICABLE SPECIFICATIONS.  WE ASSUME NO RESPONSIBILITY FOR SUITABILITY FOR INTENDED USAGE.  IF AN ITEM PROVES TO BE DEFECTIVE WITHIN ONE YEAR FROM SHIPMENT, PROVIDED IT HAS BEEN USED AS RECOMMENDED, AND IN ACCORDANCE WITH RECOGNIZED PIPING PRACTICE, AND PROVIDING IT HAS NOT BEEN WORN OUT DUE TO SEVERE CORROSIVE OR ABRASIVE OPERATING CONDITIONS, IT WILL BE REPLACED WITHOUT CHARGE.  WE WILL NOT ASSUME LIABILITY FOR LABOR EXPENDED, OR DAMAGES ACCRUING FROM THE USE OF MATERIAL PURCHASED FROM US.  IF MATERIAL IS DEFECTIVE, THE LIMIT OF DAMAGE IS THE PRICE OF THE DEFECTIVE MATERIAL.  THIS LIMITATION OF RESPONSIBILITY TO THE VALUE OF THE PRODUCT SHIPPED APPLIES TO SPECIAL AS WELL AS STANDARD ITEMS AND BRISTOL METALS, INC. MAKES NO OTHER WARRANTY, EITHER EXPRESS OR IMPLIED."

Blankenship's affidavit continued: "Because it has been a long term, substantial customer, Robert-James has received many copies of Bristol's Terms and Conditions over the years.  To Affiant's knowledge, Robert-James never objected to those Terms and Conditions."  According to Blankenship, a copy of the terms and conditions was found in Robert-James' file regarding the March 1996 sale.

On March 18, 1996, Robert-James sent Bristol Metals a purchase order for these 42 pipe lengths.  It said, "THIS IS CONFIRMATION OF A PRIOR PURCHASE ORDER."  Robert-James' purchase order did not mention Bristol Metals' terms and conditions.

In August 1996, Intrastate Piping & Controls, Inc. (Intrastate Piping)
, an experienced pipe installation company with annual revenues of around $20 million, won a contract to install piping at the Ashland Chemical Company (Ashland Chemical) in Calumet City, Illinois.  On August 13, 1996, Intrastate Piping contacted Robert-James for price information on 900 feet of two-

inch continuous seam welded stainless steel pipe. 
 According to Robert-James' Robert Baldauff (Baldauff), Robert-James conveyed price information to Intrastate Piping, and Intrastate Piping placed a purchase order over several telephone calls within a few hours.  
In an affidavit, Intrastate Piping's John Nastav (Nastav) said "*** there was no discussion of any kind as to any limitations of recovery or waiver of warranty by either Robert-

James or Bristol Metal."  There is no indication in the record any warranties, express or implied, were discussed.

Once Intrastate Piping placed a purchase order, Robert-James generated its August 13 sales order acknowledgment.  
The front side of this form said, "SEE REVERSE SIDE FOR TERMS AND CONDITIONS OF SALE."  The back side, under the heading "Warranties," said: "[Robert-James] shall not be liable for any consequential, incidental, indirect or contingent damages arising from use or failure of any product or otherwise."
  According to Robert-James' William Barto (Barto), Robert-James generated an acknowledgment "[w]hen the work order is created," and sent the acknowledgment before shipping the pipe.  Barto said each acknowledgment included Robert-James' terms and conditions and its remedy limitation, and Intrastate Piping never objected to these terms.

Shortly after its December 1996 installation, a portion of the pipe began to leak.  Representatives from Ashland Chemical, Intrastate Piping, Robert-James, and Bristol Metals met at the Ashland Chemical plant on December 29, 1996.  The next day, Robert-James and Bristol Metals agreed to supply 900 feet of replacement pipe, more than enough to repair the leaky segments.  Over the next six to eight weeks, Intrastate Piping removed the defective pipe and installed the replacement pipe, allegedly incurring over $200,000 in labor costs.  Intrastate Piping demanded Robert-James and Bristol Metals reimburse these costs.  When they refused, Intrastate Piping filed a complaint against them.

After extensive discovery, all the parties filed summary judgment motions.  In a May 5, 1999, MEMORANDUM AND ORDER, the trial court granted summary judgment to Bristol Metals and Robert-James.  Intrastate Piping's appeal followed.

DECISION

Summary judgment should be granted if "*** there is no genuine issue as to any material fact and *** the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2-1005(c) (West 1998).  We review 
de
 
novo
 the trial court's decision to grant summary judgment.  
Murneigh v. Gainer
, 177 Ill. 2d 287, 298, 685 N.E.2d 1357 (1997).

Intrastate Piping insists this case involves warranty disclaimers.  
The trial court reviewed the contract between Bristol Metals and Robert-James and concluded:

"In this case, where the goods provided by Bristol are defective, the terms and conditions of the contract limit recovery to the price of the defective material.  This is clearly a limit on remedy rather than a waiver of warranty, since it anticipates that a breach of the warranty against defects has already occurred.  It does not attempt to limit the warranty of merchantability by disclaiming liability, but merely provides that Robert-

James may only recover the price of the defective material."

The court also reviewed the contract between Robert-James and Intrastate Piping and found the terms and conditions of the sales order acknowledgment included a remedy limitation, not a warranty disclaimer: "The language of this contract speaks only of limiting damages for defective products; it does not attempt to waive liability for defective products."

We agree with the trial court's
 characterizations of the two contracts.  Both Bristol Metals' and Robert-James' terms and conditions attempted to limit remedies in the event of liability for a warranty breach; they did not attempt to avoid liability.  
Reibold v. Simon Aerials, Inc.
, 859 F. Supp. 193, 197 (E.D. Va. 1994); see 
Sorce v. Naperville Jeep Eagle, Inc.
, 309 Ill. App. 3d 313, 326, 722 N.E.2d 227 (1999)(limitation of damages and disclaimer of warranties are distinct matters); see also 810 ILCS Ann. 5/2-316, Uniform Commercial Code Comment 2, at 230 (Smith-

Hurd 1993)(noting remedy limitations are not governed by the code section on warranty disclaimers).

Before addressing the substance of these remedy limitations, we must determine whether they were part of the contracts in this case.

The Uniform Commercial Code does not prevent a remedy limitation from operating against a "downstream" buyer.  See 810 ILCS Ann. 5/2-318, Uniform Commercial Code Comment, at 245 (Smith-Hurd 1993) ("To the extent that the contract of sale contains provisions under which *** remedies for breach are limited, such provisions are equally operative against beneficiaries of warranties under this section"); 
Riebold
, 859 F. Supp. at 196.

On March 12, 1996, Robert-James requested price information from Bristol Metals.  On March 13, Bristol Metals sent Robert-

James a quotation, which may not have included the document containing Bristol Metals' terms and conditions and its remedy limitation
.  The record does not reflect additional contract-

forming discussions between Bristol Metals and Robert-James, but it does contain Bristol Metals' March 15 "ORDER CONFIRMATION," which included the remedy limitation, and Robert-James' March 18 purchase order, which confirmed a "prior" purchase order.

On August 13, 1996, Intrastate Piping requested price information from Robert-James.  After several telephone calls, Intrastate Piping placed a purchase order.  Robert-James then generated its August 13 sales order acknowledgment, which included its remedy limitation.

Under section 2-207 of the Uniform Commercial Code, which governs this "battle of the forms" contest:

"(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of them has already been given or is received within a reasonable time after notice of them is received."  810 ILCS 5/2-207 (West 1998).

After scouring the record for evidence indicating when the parties formed their contracts, we conclude Bristol Metals and Robert-James formed a contract on March 15, 1996, when Bristol Metals sent its "ORDER CONFIRMATION" containing its remedy limitation.  We also conclude Robert-James and Intrastate Piping formed a contract on August 13, 1996, when Robert-James sent its sales order acknowledgment containing its remedy limitation.    Businesses routinely use written confirmations and acknowledgments to comply with the Statute of Frauds (see 810 ILCS 5/2-201(2) (West 1998); 
Bureau Service Co. v. King
, 308 Ill. App. 3d 835, 838-39, 721 N.E.2d 159 (1999)), and their trading partners anticipate them as part of the contract.

Even if, as Intrastate Piping contends, the parties entered into oral contracts before any confirmations or acknowledgments were sent, the additional terms in these documents--the remedy limitations--became part of the contracts by operation of statute.  Robert-James never objected to Bristol Metals' remedy limitation, and Intrastate Piping never objected to Robert-James' remedy limitation.  These clauses had appeared in contracts among these parties for several years, and all the parties were familiar with them.  A remedy limitation which becomes part of the parties "course of dealing" (see 810 ILCS 5/1-205 (West 1998)) binds the parties (see 810 ILCS 5/1-201(3) (West 1998)("agreement" definition includes course of dealing); 
Capitol Converting Equipment, Inc. v. Lep Transport, Inc.
, 750 F. Supp. 862, 867-68 (N.D. Ill. 1990)).

Relying on 
Album Graphics, Inc. v. Beatrice Foods Co.
, 87 Ill. App. 3d 338, 408 N.E.2d 1041 (1980), Intrastate Piping contends the warranty disclaimers and remedy limitations materially altered, and therefore never became part of, the parties' oral contracts.  In 
Album Graphics
, a cosmetics company sued its glue manufacturer for breach of warranty when a weak adhesive allowed its cosmetics packages to fall apart.  In defense, the glue manufacturer contended each of its glue container labels and each of its shipping invoices bore warranty disclaimers and remedy limitations.

On appeal, the court assumed the parties formed their contract before delivery of the labels or the invoices.  
Album Graphics
, 87 Ill. App. 3d at 345.  The court then assumed the label and the invoices were "confirmatory memoranda" under section 2-207.  
Album Graphics
, 87 Ill. App. 3d at 346.  But the court found the warranty disclaimers and the remedy limitations did not become part of the contract: "A term disclaiming warranties, and we might add a term limiting remedies, is undoubtedly a term that materially alters a contract."  
Album Graphics
, 87 Ill. App. 3d at 347.

The court cited section 2-207's Comment 4 (see 810 ILCS Ann. 5/2-207, Uniform Commercial Code Comment 4, at 118 (Smith-Hurd 1993)), which discusses only warranty disclaimers.  If our case involved only warranty disclaimers, 
Album Graphics
 would be more persuasive.  But, according to section 2-207's Comment 5, ignored by the court in 
Album Graphics
, a remedy limitation which provokes no objection becomes a part of the contract because a clause "limiting remedy in a reasonable manner" does not involve "unreasonable surprise" or materially alter a contract.  See 810 ILCS Ann. 5/2-207, Uniform Commercial Code Comment 5, at 118 (Smith-Hurd 1993); see also 
In re Chateaugay Corp.
, 162 B.R. 949, 956 (Bankr. S.D.N.Y. 1994).  Additionally, the remedy limitation in 
Album Graphics
 appeared only when the goods were shipped, long after the parties entered into their contract.  Here, the Robert-James remedy limitation was sent the same day the parties entered into their contract and was received before any pipe was shipped.

Now we move to what becomes the central issue in this case: whether the remedy limitations were valid.

Section 2-719 of the Uniform Commercial Code provides:

"(1) Subject to the provisions of subsections (2) and (3) of this Section ***,

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and 

(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable.  Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not."  810 ILCS 5/2-719 (West 1998).

In remedy limitation cases, the court must make three inquiries:

(1) whether the contract limited the remedy to repair or replacement; (2) whether, if the remedy were so limited, it failed of its essential purpose; and (3) whether, if the limited remedy failed of its essential purpose, consequential damages may be recovered because their exclusion is unconscionable."  
Myrtle Beach Pipeline Corp. v. Emerson Electric Co.
, 843 F. Supp. 1027, 1041 (D.S.C. 1993); accord 
J.D. Pavlak, Ltd. v. William Davies Co.
, 40 Ill. App. 3d 1, 3-5, 351 N.E.2d 243 (1976).

Illinois courts have recognized and enforced exclusive remedy provisions, even without the word "exclusive," when the contract as a whole warrants such a construction.  
Omnitrus Merging Corp. v. Illinois Tool Works, Inc.
, 256 Ill. App. 3d 31, 34, 628 N.E.2d 1165 (1993); accord 
Veath v. Speciality Grains, Inc.
, 190 Ill. App. 3d 787, 797, 546 N.E.2d 1005 (1989); see 
CogniTest Corp. v. Riverside Publishing Co.
, 107 F.3d 493, 498 (7th Cir. 1997)("Illinois looks to whether a reasonable construction of the contract indicates that the parties intended a limited remedy to be exclusive"); 
Schultz v. Jackson
, 67 Ill. App. 3d 889, 893, 385 N.E.2d 162 (1979)("While this portion of the agreement is not a model of draftsmanship, we believe this language is sufficient to rebut the presumption that remedies stated in the contract are cumulative to those contained in the Code.")

Here, both contracts limit the remedies available for a warranty breach.  Bristol Metals' terms and conditions said, "IF MATERIAL IS DEFECTIVE, THE LIMIT OF DAMAGE IS THE PRICE OF THE DEFECTIVE MATERIAL."  Robert-James' terms and conditions said Robert-James shoulders no liability for "*** consequential, incidental, indirect or contingent damages ***."  These clauses clearly excluded all remedies except direct damages--the cost of the pipe.

Having determined the exclusive remedy provisions limited Intrastate Piping to the price of the replacement pipe, we turn to our next inquiry: whether the remedy limitations failed of their essential purpose.  (Intrastate Piping does not employ this argument against Bristol Metals.)

The Uniform Commercial Code does not delineate when a remedy limitation fails of its essential purpose, but the Official Comment to section 2-719 gives us a persuasive clue:

   "Under this section parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect.

However, it is of the very essence of a sales contract that at least minimum adequate remedies be available.  If the parties intend to conclude a contract for sale within this Article they must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract.  *** [U]nder subsection (2), where an apparently fair and reasonable  clause because of circumstances fails in its essential purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article."  
810 ILCS Ann. 5/2-719, Uniform Commercial Code Comment 1, at 488 (Smith-Hurd 1993).  See 
AES Technology Systems, Inc. v. Coherent Radiation
, 583 F.2d 933, 939 (7th Cir. 1978); 
Interlake Packaging Corp. v. Strapex Corp.
, 842 F. Supp. 304, 306 (N.D. Ill. 1993).

While the Uniform Commercial Code disfavors contractual provisions which leave the non-breaching party without a remedy, it does not disfavor limits on recoverable damages.  See 
Cole Energy Development Co. v. Ingersoll-Rand Co.
, 8 F.3d 607, 611 (7th Cir. 1993).  We believe this includes incidental, as well as consequential, damages.

The "essential purpose" of a damage or remedy limitation is providing "*** the seller an opportunity to tender conforming goods and thereby limit [its] exposure to risk for other damages, while simultaneously providing the purchaser with the benefit of his bargain--i.e.--conforming goods."  
Myrtle Beach Pipeline
, 843 F. Supp. at 1042.

This is not a case where the seller unreasonably delayed replacement of the product or refused to replace it at all.  See 
Myrtle Beach Pipeline
, 843 F. Supp. at 1043 (collecting Federal cases which conclude "*** the limited remedy of repair or replacement is generally held to have performed its essential purpose if the seller timely cures the defects"); but see 
AES Technology
, 583 F.2d at 940 (remedy limitation failed its essential purpose when the seller never corrected defects in its product); 
Custom Automated Machinery v. Penda Corp.
, 537 F. Supp. 77, 83 (N.D. Ill. 1982)(remedy limitation failed its essential purpose when the seller did not correct the defects in its product "within a reasonable time").  See also 
Riegel Power Corp. v. Voigt Hydro
, 888 F.2d 1043, 1045 (4
th
 Cir. 1989)(supplying a six-factor test to determine whether a remedy limitation failed its essential purpose).  Instead, as the trial court found, 
Bristol Metals and Robert-James replaced the defective materials free of charge: "Ultimately, the Defendants [Bristol Metals and Robert-James] went above and beyond their contractual duty by replacing not just the defective pipe, but all of the pipe."

Again, we agree with the trial court.  Robert-James and Bristol Metals, mere weeks after Intrastate Piping discovered the leak, replaced not only the defective pipe, but all 900 feet of pipe.  Because Intrastate Piping received the only remedy to which it was entitled under the contracts--the benefit of its bargain, non-defective pipe--the remedy limitations here did not fail of their essential purpose. 

Having found the remedy limitations did not fail of their essential purpose, we briefly consider section 2-719(3) and the issue of whether this limitation was unconscionable.  See 
Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.
, 86 Ill. App. 3d 980, 989, 408 N.E.2d 403 (1980).  We note Intrastate Piping does not press an unconscionability argument.  See 
Sorce
, 309 Ill. App. 3d at 325.  Intrastate Piping, Robert-James, and Bristol Metals were sophisticated businesses, capable of protecting their own interests--and appropriately allocating risks--in the bargaining process.  That is what they did.  See 
CogniTest
, 107 F.3d at 499; 
AES Technology
, 583 F.2d at 939; 
Lefebvre Intergraphics, Inc. v. Sanden Machine, Ltd.
, 946 F. Supp. 1358, 1372 (N.D. Ill. 1996).  The remedy limitations were not unconscionable.

CONCLUSION

The trial court correctly granted summary judgment to Bristol Metals and Robert-James.  We affirm.

Affirmed.

CAHILL, P.J., and CERDA, J., concur.