**Joseph MESSANA, Plaintiff–Appellee,**

v.

**MERCEDES–BENZ OF NORTH AMERICA, INC., Defendant– Appellant.**

Nos. 00–1514, 00–2964.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 23, 2000.

Decided March 7, 2001.

Before POSNER, DIANE P. WOOD, and WILLIAMS, Circuit Judges.

ORDER

This case involves a breach of warranty action pursuant to the Magnuson–Moss Warranty Act ("Magnuson–Moss" or "the Act") in connection with the purchase of an allegedly defective automobile. The jury returned a verdict in favor of the plaintiff-appellee, awarding nearly $80,000 in damages. For the first time, on appeal, the appellant argues that the district court lacked subject matter jurisdiction because the plaintiff failed to meet the Act's amount in controversy requirement. Because there is insufficient basis in the rec-

ord to determine the value of the vehicle in its allegedly defective state, we REMAND this case to the district court to make the requisite factual determinations. If the district court determines that it does not have jurisdiction, it shall dismiss the action on this basis. Accordingly, we do not reach the merits.

Messana purchased a 1998 Mercedes–Benz S420V from Orland Park Motors, an authorized Mercedes–Benz dealership. The dealership provided him with a written limited warranty promising to repair defective parts. Messana took the vehicle to the dealership for repair on several occasions. He claimed, among other things, that he intermittently heard a noise from the back of the car and that the trunk remote did not function consistently. Dissatisfied with the dealership repairs, he brought suit seeking the following damages:

1. Cost of Vehicle: $78,000

2. Loss of use in an undisclosed sum;

3. Incidental and consequential damages in an undisclosed sum;

4. Aggravation and inconveniences in an undisclosed sum;

5. Prejudgment interest in an undisclosed sum;

6. Reasonable attorneys' fees and court costs in an undisclosed sum.

■ Magnuson–Moss allows a consumer to bring a state breach of warranty action against a dealer when the amount in controversy is at least $50,000. See Gardynski–Leschuck v. Ford Motor Co., 142 F.3d 955, 959 (7th Cir.1998). In Gardynski, we set forth the formula for calculat-

ing the amount in controversy in defective automobile cases. See id. at 957. Under this formula, we begin with the replacement price. The replacement price is the cost of a new vehicle less the value of the allegedly defective vehicle. From this number we subtract the benefit or "use value" the plaintiff obtained prior to revoking his acceptance. The remainder is the amount in controversy.[1]

■ A court may determine the value of an allegedly defective vehicle by, among other ways, relying on expert testimony. See, e.g., Buechin v. Ogden Chrysler–Plymouth, Inc., 159 Ill.App.3d 237, 111 Ill.Dec. 35, 511 N.E.2d 1330, 1340 (1987). A court may determine use value by multiplying the number of miles by a set value per mile, as the parties have agreed to do here. Here, there is sufficient basis in the record to determine the replacement price and the use value but not the value of allegedly defective vehicle. Therefore we remand for the district court to make this specific factual determination.

We note that it appears unlikely that the plaintiff will satisfy the amount in controversy requirement. The replacement value of the car is approximately $78,000. The parties suggest that the use value should amount to at least $8,743.04.[2] This would bring the total amount in controversy down to $69,256.96. Thus, Messana would have to present competent proof that the value of the vehicle in its allegedly defective condition is less than or equal to $19,256.96 in order to satisfy the amount in controversy. See Rexford Rand Corp. v. Ancel, 58 F.3d 1215, 1218 (7th Cir. 1995)("Where, as here, a defendant chal-

1. In arithmetic shorthand, the formula reads: amount in controversy = (replacement cost— value of used car)—use value obtained. See id.

2. This figure is derived by multiplying $0.32 per mile (the IRS business deduction for an automobile) by the number of miles accumu-

lated by the day suit was filed—27,322. Cf. Gardynski, 142 F.3d at 958 citing St. Paul Mercury Indemnity v. Red Cab Co., 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938) ("jurisdiction depends on the state of affairs when the case begins").

lenges the plaintiff's allegation of the amount in controversy, the plaintiff must support its assertion with 'competent proof.' "). As the "defects" do not appear to be major, it seems likely that a 1998 Mercedes–Benz would sell on the open market for a greater amount.[3]

Based on the above, we remand to the district court to make the requisite factual determinations.

---

**3.** It also seems unlikely that Messana could reach the amount in controversy threshold by stating a claim for incidental and consequential damages under Illinois law in light of *Intrastate Piping v. Robert–James Sales, Inc.,* 315 Ill.App.3d 248, 248 Ill.Dec. 43, 733 N.E.2d 718 (2000). In that case, the Illinois appellate court explained that the "essential purpose" exception which allows a buyer to recover incidental and consequential damages despite an express damages limitation should not apply where the plaintiff has received a fair quantum of remedy for the breach. *See Intrastate Piping,* 315 Ill.App.3d at 257–58, 248 Ill.Dec. 43, 733 N.E.2d at 725. Otherwise, the damages limitation should be upheld by courts. *See id. But see id.* at 258, 248 Ill.Dec. 43, 733 N.E.2d 725, (implying that a limitation barring incidental and consequential damages may be unconscionable under Illinois law where there is unequal bargaining power between the parties). The warranty here expressly precludes recovery for incidental and consequential damages. And because Messana would be entitled to replacement cost less the value of the used car and the use value he obtained from it, it is difficult to accept the argument that he would not receive a fair quantum of recovery. *See Gardynski,* 142 F.3d at 958.

