**COVENTRY CARE, INC.**

v.

**UNITED STATES of America et al.**

**Civ. A. No. 72–762.**

United States District Court,
W. D. Pennsylvania.

Nov. 1, 1973.

H. David Rothman, Pittsburgh, Pa., for plaintiff.

Thomas Daley, U. S. Atty., Thomas J. Shannon, Robert Smiley, Thomas J. Shannon, William Hauser, Pittsburgh, Pa., Garland Tanks, Tax Div., Washington, D. C., for defendants.

## OPINION

### RE: CLAIMS OF DAVID SAGE, INC. AND UNITED STATES OF AMERICA

KNOX, District Judge.

This is an action of interpleader filed by the plaintiff Coventry Care, Inc., a Pennsylvania business corporation, which has paid into court pursuant to order dated September 15, 1972, the sum of $57,750 which sum represents the two notes hereinafter mentioned, one for $35,000 and the other for $20,000 plus interest thereon. The purpose of the interpleader was to determine the rights of the various parties to the proceeds of said notes. By order of this court, the claims of David Sage, Inc., a New York corporation and the United States of America as to their respective priorities in this fund were assigned for hearing first before a determination of the other claims. Hearing on the claims of these two parties was duly held before the court non-jury on August 2, 1973, at which time testimony was taken. As a result thereof, the court makes the following findings of fact with respect to the claim of David Sage, Inc. and the United States of America.

### FINDINGS OF FACT

### (CLAIMS OF DAVID SAGE, INC. AND UNITED STATES OF AMERICA)

1. On May 6, 1971, Coventry Care, Inc. (Coventry) issued a $20,000 promissory note to Contemporary Institute, Inc. (Contemporary) as part consideration for the purchase of a subsidiary of Contemporary. The $20,000 note was assigned by Contemporary to Western Pennsylvania National Bank (WPNB) on May 21, 1971.

2. On May 6, 1971, Coventry also issued a $35,000 promissory note to Contemporary as part consideration for the purchase of a subsidiary of Contemporary. The note was assigned by Contemporary to the United States Internal Revenue Service on May 21, 1971.

3. The $35,000 note has been in the possession of the Internal Revenue Service since this assignment on May 20, 1971, until it was placed in the custody of the court as Government's Exhibit 11, which was moved into evidence.

4. The assignments by Contemporary mentioned in Paragraphs 1 and 2 were executed by Robert C. Braumuller, the President and Chief Executive Officer of Contemporary on May 20, 1971. They were dated May 21, 1971. Braumuller resigned his offices on May 24, 1971.

5. The $20,000 note was assigned by Contemporary to WPNB to secure an obligation of Contemporary owed to the bank.

6. On the dates set forth below, a delegate of the Secretary of the Treasury made assessments in accordance with law against the taxpayer, Contemporary Institute, Inc. for unpaid withholding and Federal Insurance Contributions Act taxes, penalties and interest in the amount of $47,111.76. The aforementioned assessments are more fully described hereinbelow:

| Taxable Quarter Ending | Notice Demand & Assessment Date | Tax Assessed | Penalty Assessed | Interest Assessed | Accrued Failure to Pay Penalty | Unpaid Balance as of 12-31-72 |
|---|---|---|---|---|---|---|
| 3-31-71 | 6-4-71 | $25,148.69 | $1,257.43(2) 251.49(3) | $146.41 | $2,124.53(4) | $29,576.04 |
| 6-30-71 | 8-6-71 | 15,961.05 | 798.05(1) | 15.64 | 1,408.47(4) | 19,255.16 |
| | | | | | Lien Fees | 8.50 |
| | | | | | Total | $48,839.70(5) |

(1) Failure to file penalty, 26 U.S.C. § 6651(a)(1).

(2) Depositor receipt penalty, 26 U.S.C. § 6656.

(3) Failure to pay penalty, 26 U.S.C. § 6651(a)(2).

(4) Accrued failure to pay penalty, 26 U.S.C. § 6651(a)(2).

(5) Interest after December 31, 1972, accrues at $6.80 per day. Notice and demand for payment was made on the date of each assessment.

The total amount due on August 2, 1973, the date of hearing, was $51,867.10.

7. The tax lien for the June 4, 1971, assessment was filed on July 14, 1971. The second tax lien for the August 6, 1971, assessment was filed on August 20, 1971. Both of the liens were filed with the Prothonotary of Allegheny County, Pittsburgh, Pennsylvania.

8. As evidenced by the endorsements on the note, WPNB assigned the $20,000 note back to Contemporary on June 1, 1971; and Contemporary assigned the note to United Professional Data Processing (UPDP) on June 9, 1971. UPDP assigned the note to David Sage, Inc. (Sage) on October 18, 1971.

9. No actual amount in money or property was paid by David Sage, Inc. at the time of the assignment on October 18, 1971, nor is there any evidence as to what, if any, value UPDP paid for the note on June 9, 1971, or at any other time.

10. The subject note was in the possession of "United" when it received, on or about September 27, 1971, a notice of levy from the Internal Revenue Service directed specifically to an alleged sum of $10,000 due to Contemporary and directed generally to any assets in the possession of United belonging to the taxpayer, Contemporary. United replied and disputed the $10,000 obligation, seeking a release of the notice of levy. It failed to advise Internal Revenue Service of its possession of the subject note.

11. David Sage, President of David Sage, Inc. (Sage) asserts that in return for the $20,000 note, he promised on October 18, 1971, to give UPDP a 25% interest in a business venture that had not yet assumed any definite form.

12. David Sage, the said president of Sage, allegedly took possession of the instrument as part of preliminary discussions of a proposed venture, the terms of which were not then, or ever, reduced to writing. The total capitalization of the venture was not articulated, nor had any agreement been arrived at concerning the value and cost of the services of United, which services were to be part and parcel of any agreement yet to be consummated.

13. Later, the business venture took the form of a New York corporation, Energy Management Corporation (Energy) which was not incorporated, and, hence, not created until January 21, 1972.

14. David Sage has not yet transferred any stock of Energy to UPDP.

15. UPDP has not yet made any demand for said stock or any other demand consistent with its promised 25% interest in the planned business venture.

16. David Sage asserts that he does not know whether he would transfer 25% of the shares of Energy to UPDP if the $20,000 note is not paid.

17. Actual notice of levy under the assessments set forth in Finding No. 6 was given Coventry Care, Inc. on September 20, 1971. David Sage, Inc. first learned of claims against the $20,000 note when it was dishonored on presentation for payment on November 6, 1971. UPDP learned of the levy when it received notice thereof on September 27, 1971.

18. The Internal Revenue Service demanded payment of the $35,000 note on November 15, 1971.

19. On September 15, 1972, Coventry Care, Inc. paid into court the sum of $57,750 being the amount owing on the $20,000 note and the $35,000 above described and requested that the various parties asserting claims in this fund be interpleaded to determine their respective rights therein. David Sage, Inc. and the United States of America have each filed claims asserting their rights

and priorities in the said fund which is before the court for distribution.

## DISCUSSION

### (A) Claim of David Sage, Inc.

The question of the priority of the claim of David Sage, Inc. vis-a-vis the United States of America depends upon Section 6323 of the Internal Revenue Code (26 U.S.C. § 6323) and also the position of David Sage, Inc. under the Uniform Commercial Code as adopted by both New York and Pennsylvania. While the government claims that its position is secure because it filed its notices of lien on July 14 and August 20, 1971, prior to October 18, 1971, when Sage, Inc. took delivery of the $20,000 note, allegedly became a holder in due course, nevertheless we prefer to disallow the claim of David Sage, Inc. on the firmer ground that it was not a holder in due course, nor a purchaser under Section 6323.

There can be little doubt that the note in question, which is in evidence as Exhibit A, was a negotiable instrument and hence constituted a security under the definition Section H of the Internal Revenue Code 6323. The Internal Revenue Code Section 6323(b)(1)(A) provides:

(b) *Protection for certain interests even though notice filed.*—Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid—

(1) *Securities.*—With respect to a security (as defined in subsection (h)(4))—

(A) as against a purchaser of such security who at the time of purchase did not have actual notice or knowledge of the existence of such lien;

Of particular importance to the decision of this case are certain provisions of Article III of the Uniform Commercial Code (12A Purdon's Pa.Statutes Section 3; N.Y.Uniform Commercial Code, Section 3). Section 3–302 of the Uniform Commercial Code provides as follows:

*"Holder in Due Course*

(1) A holder in due course is a holder who takes the instrument

(a) for value; and

(b) in good faith; and

(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

(2) A payee may be a holder in due course.

(3) A holder does not become a holder in due course of an instrument:

(a) by purchase of it at judicial sale or by taking it under legal process; or

(b) by acquiring it in taking over an estate; or

(c) by purchasing it as part of a bulk transaction not in regular course of business of the transferor.

(4) A purchaser of a limited interest can be a holder in due course only to the extent of the interest purchased."

Section 3–303 provides:

*"Taking for Value*

A holder takes the instrument for value

(a) to the extent that the agreed consideration has been performed or that he acquires a security interest in or a lien on the instrument otherwise than by legal process; or

(b) when he takes the instrument in payment of or as security for an antecedent claim against any person whether or not the claim is due; or

(c) when he gives a negotiable instrument for it or makes an irrevocable commitment to a third person."

Further, Section 3–307 provides:

*"Burden of Establishing Signatures, Defenses and Due Course*

(1) Unless specifically denied in the pleadings each signature on an instrument is admitted. When the effectiveness of a signature is put in issue

(a) the burden of establishing it is on the party claiming under the signature; but

(b) the signature is presumed to be genuine or authorized except where the action is to enforce the obligation of a purported signer who has died or become incompetent before proof is required.

(2) When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense.

(3) *After it is shown that a defense exists a person claiming the rights of a holder in due course has the burden of establishing that he or some person under whom he claims is in all respects a holder in due course."*

We hold that under the circumstances of this case, claimant David Sage, Inc. did not give value for the purchase of this note and has not sustained its burden of establishing that it or some person under whom it claims is in all respects a holder in due course as required by Section 3–307.

Of crucial importance, of course, is the provision of 303(c) that value is given when the purchaser gives a negotiable instrument for it (which was not done) or makes an irrevocable commitment to a third person.

Anderson Uniform Commercial Code, 1971 Edition, has this commentary on Section 3–303: "By recognizing an irrevocable commitment as value, the Code makes an exception to the provision of Section 3–303(a) under which the consideration is not value where not yet performed." Crest Finance Co. v. First State Bank, 37 Ill.2d 243, 226 N.E.2d 369, is cited.

The instances of irrevocable commitment which are given are those where the acquirer of the instrument furnishes an irrevocable letter of credit to a third person or himself transfers the paper to a holder in due course to whom he is absolutely liable.

It is further clear that a promise to give consideration in the future, such as to perform services as an attorney, makes a person a holder in due course only to the extent that the services have been performed. See Korzenik v. Supreme Radio, Inc., 347 Mass. 309, 197 N.E.2d 702 (1964). Anderson in the commentary on Section 3–303.6 makes the flat statement: "An executory contract is not value".

Again, in O. P. Ganjo, Inc. v. Tri-Urban Realty Corp., 108 N.J.Super. 517, 261 A.2d 722 (1969), the court had a complicated situation involving a subcontractor who was complained of as being too slow and who needed money and notes were given so that he could raise funds. The maker put the note in the desk drawer and the subcontractor stole it. Only $1,000 was advanced originally and the balance was to be paid if and when the subcontractor finished the job which he never did. It was held that the plaintiff who had advanced the original $1,000 was a holder in due course only to this extent and not for the balance to be paid under the note when the job was completed.

See also Restatement of Trusts 2d 302 and comment (J) thereunder holding that promise to make payment in the future is not value. 11 Am.Jur.2d Sec. 428, page 459 states that the time when the value is given is decisive in these questions and that a taker takes for value only to the extent that the agreed consideration has been performed or has made an irrevocable commitment such as delivering a negotiable instrument which may be in the hands of a holder in due course or an irrevocable letter of credit.

Applying these rules to the facts of this case, it is easy to determine that regardless of the validity of the transfers to David Sage, Inc. the latter is not a holder in due course because no value was given on October 18, 1971, or any other date. While David Sage, Inc. may have regarded itself as being bound to give a 25% interest in a business venture which had not then assumed any

definite form but which has since taken the shape of a New York business corporation which was not incorporated until January 1, 1972, nevertheless it can readily be seen that the agreement to give a 25% interest in this business venture as of October 18, 1971, was so vague and nebulous as to be unenforceable. We are not told whether the business venture was to be a general partnership, a joint venture, a limited partnership or a corporation or if the latter, how many and what classes of shares would be issued. In any event, the agreement was merely an executory contract which David Sage, Inc. could have refused to perform because of failure of consideration, that is, because of the fact that the government's rights to these notes had intervened by virtue of its liens and levies and the notes were therefore worthless. See Restatement of Contracts, Section 274. We therefore hold that David Sage, Inc. had not made an irrevocable commitment and had not given value as required by Section 3–303 of the Uniform Commercial Code, particularly bearing in mind that under 3–307 it had the burden of establishing that it was in all respects a holder in due course.

(B) Claim of the United States Government.

■ In view of our holding with respect to the claim of David Sage, Inc., we can then easily dispose of the claims of the United States Government. There appears to be no question that the $35,000 note which was executed on May 6, 1971, was assigned to the Internal Revenue Service on May 20 or 21, 1971, by Robert C. Braumuller, President and Chief Executive Officer of Contemporary Institute, Inc. We hold that the assignment of such note to the Internal Revenue Service was within the powers of Braumuller as President and Chief Executive Officer on May 21, 1971. See Gillian v. Consolidated Foods Corp., 424 Pa. 407, 227 A.2d 858 (1967); Altex Aluminum Supply Co. v. Asay, 72 N.J.Super. 582, 178 A.2d 636 (1962).

■ The liens in question were duly filed by the government on June 4, 1971, for the first lien and August 6, 1971, for the second lien with the Prothonotary of Allegheny County, Pennsylvania, pursuant to Pennsylvania law. 74 Purdon's Pa.Stat. 156–1 et seq. It appears that as to the $35,000 note, the government is a holder in due course since under 3–303(b) of the Uniform Commercial Code, a holder takes an instrument for value when he takes it in payment of or as security for an antecedent claim. As to the $20,000 note, we hold that the government's lien under the June 6, 1971 filing was superior to any alleged transfer of the same on June 9, 1971, or subsequently on October 18, 1971.[1] The record shows that notice of the levy on

---

1. 26 U.S.C. § 6321 provides:
"*Lien for taxes* If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."
26 U.S.C. § 6323(a) provides:
"*Validity against mortgagees, pledgees, purchasers, and judgment creditors*
(a) Invalidity of lien without notice.—
Except as otherwise provided in subsection (c), the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate—

(1) Under state or territorial laws.—In the office designated by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law designated an office within the State or Territory for the filing of such notice; or
(2) With clerk of district court.—In the office of the clerk of the United States district court for the judicial district in which the property subject to the lien is situated, whenever the State or Territory has not by law designated an office within the State or Territory for the filing of such notice; or
(3) *With clerk of district court for District of Columbia.*—In the office of the clerk of the United States District Court for the District of Columbia, if the property subject to the lien is situated in the District of Columbia."

the $20,000 note was given to Coventry Care by the Government on September 20, 1971.

The shelter provision of 26 U.S.C. § 6323(b)(1)(A), quoted supra, would protect UPDP as a purchaser if it paid value on June 9, 1971, without actual notice or knowledge of the government's lien. Under 6323(h)(6), however, a purchaser is one who acquires his interest for an "adequate and full consideration in money or money's worth." There is no evidence that UPDP paid anything for this note.

■ The burden was on the claimant to bring itself within the shelter provision. United States v. Franklin Federal Saving & Loan Assn., 140 F.Supp. 286 (M.D.Pa.1956); Filipowicz v. Rothensies, 43 F.Supp. 619 (E.D.Pa.1942).

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the fund paid into court and which is before it for distribution and of the parties claimant thereto.

2. The United States of America, through its Internal Revenue Service, is a holder in due course of the $35,000 note duly assigned to it by Robert C. Braumuller, President ahd Chief Executive Officer of Contemporary Institute, Inc. on May 20 or May 21, 1971.

3. The assignment of such note was within the actual and apparent powers and authority of said Robert C. Braumuller as President and Chief Executive Officer of the Corporation, Contemporary Institute, Inc.

4. Claimant, David Sage, Inc., is not a holder in due course of the $20,000 note assigned to it on October 18, 1971.

5. The said claimant David Sage, Inc. did not pay value for acquisition of the said note by assignment dated October 18, 1971.

6. The said David Sage, Inc. has not shown that it is an assignee of a holder in due course of the said instrument.

7. Said David Sage, Inc. is not a transferee for value within the meaning of 26 U.S.C. § 6323(b)(1)(A) or 26 U.S.C. § 6323(h)(6).

8. The claimant, David Sage, Inc. has no priority in the fund now before the court for distribution.

9. The number one claimant with priority to distribution of said fund is the United States of America.

10. The liens held by the United States of America and levies and notices pursuant thereto were duly filed and given in accordance with the law and give the United States priority in said fund.

11. The amount due the United States on said liens as of August 2, 1973 is the sum of $51,867.10 as set forth in the findings of fact.

12. A further hearing will be required to determine priority of other claimants of the said fund after payment of the claims of the United States of America Internal Revenue Service.