CARTER AND GRIMSLEY, Plaintiff-Appellant and Defendant-Appellant, v. OMNI TRADING, INC., d/b/a Omni Trading Company, *et al.*, Defendants-Appellees (Rebecca Doyle, Director of the Department of Agriculture, *et al.*, Plaintiffs-Appellees; Country Grain Elevators, Inc., *et al.*, Defendants).

Third District   No. 3—98—0483

Opinion filed August 13, 1999.

James R. Carter (argued), of Carter & Grimsley, of Peoria, for appellant.

James E. Ryan, Attorney General, of Chicago (Paul Racette (argued), Assistant Attorney General, of counsel), for appellees.

JUSTICE LYTTON delivered the opinion of the court:

Omni Trading, Inc. (Omni), issued Country Grain Elevators, Inc. (Country Grain), two checks for grain it had purchased. Country Grain then endorsed the checks over to the law firm of Carter & Grimsley (Carter) as a retainer. Soon after, Country Grain failed. Omni stopped payment on the checks, and Carter filed a complaint, alleging that it was entitled to the checks as a holder in due course. The Illinois Department of Agriculture (Department) also filed a complaint claiming the check proceeds. Both Carter and the Department filed motions for summary judgment. The trial court granted the Department's motion and denied Carter's motion. Carter appeals, and we affirm.

## FACTS

Omni purchased some grain from Country Grain, and on February 2, 1996, it issued two checks, totaling $75,000, to Country Grain. Country Grain, in turn, endorsed the checks over to Carter as a retainer for future legal services. Carter deposited the checks on February 5; Country Grain failed the next day. On February 8, Carter was notified that Omni had stopped payment on the checks. Carter subsequently filed a complaint against Omni and the Director of the Department, alleging that it was entitled to the proceeds of the checks, plus prejudgment interest, as a holder in due course.

The Department filed a complaint against Carter, Omni, and Country Grain based on its statutory lien in the grain assets and equity assets of the grain elevator on behalf of the grain producers. The trial court consolidated the two complaints. Omni was subsequently dismissed as a party after depositing $43,721.50 in escrow, to be paid to either Carter or the Department.

Carter and the Department filed cross-motions for summary judgment. After hearing oral arguments and receiving supplemental written arguments on these motions, the trial court granted the Department's motion and denied Carter's motion, ordering the escrowed funds to be turned over to the Department.

## DISCUSSION

■ Rulings on motions for summary judgment are reviewed *de novo. Murneigh v. Gainer*, 177 Ill. 2d 287, 298, 685 N.E.2d 1357, 1362-63 (1997). Summary judgment may be granted when no genuine issue of material fact remains and the case may be resolved as a matter of law. *People ex rel. Toynton v. Commonwealth Edison Co.*, 285 Ill. App. 3d 357, 360, 674 N.E.2d 809, 811 (1996).

Carter argues that its motion for summary judgment should have been granted because, as a holder in due course, it has the right to recover on the checks from the drawer, Omni.

■ The Illinois Uniform Commercial Code (UCC) defines a holder in due course as:

"[T]he holder of an instrument if:

(1) the instrument when issued *** does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity, and

(2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in Section 3—306, and (vi) without notice that any party has a defense or claim in recoupment stated in Section 3—305(a)." 810 ILCS 5/3—302(a) (West 1996).

■ Section 3—303(a) of the UCC also states that: "(a) An instrument is issued or transferred for value if: (1) the instrument is issued or transferred for a promise of performance, *to the extent that the promise has been performed ***.*" (Emphasis added.) 810 ILCS 5/3—303(a) (West 1996).

Carter contends that in Illinois a contract for future legal services should be treated differently than other executory contracts. It contends that when the attorney-client relationship is created by payment of a fee or retainer, the contract is no longer executory. Thus, Carter would achieve holder in due course status. We are not persuaded.

A retainer is the act of a client employing an attorney; it also denotes the fee paid by the client when he retains the attorney to act for him. *Union Surety & Guaranty Co. v. Tenney*, 200 Ill. 349, 65 N.E. 688 (1902). We have found no Illinois cases construing section 3—303(a) as it relates to a promise to perform future legal services under a retainer. The general rule, however, is that "an executory promise is not value." *Crest Finance Co. v. First State Bank*, 37 Ill. 2d 243, 250, 226 N.E.2d 369, 373 (1967). "[T]he promise does not rise to the level of 'value' in the commercial paper market until it is actually performed." 1 Quinn, *Uniform Commercial Code Commentary and Law Digest*, at 3-135 (2d ed. 1991).

The UCC comment to section 3—303 gives the following example:
> "*Case #2.* X issues a check to Y in consideration of Y's promise to perform services in the future. Although the executory promise is consideration for issuance of the check it is value only to the extent the promise is performed. Subsection (a)(1)." 810 ILCS Ann. 5/3—303, Uniform Commercial Code Comment 1 (Smith-Hurd 1993).

We have found no exceptions to these principles for retainers. Indeed, courts in other jurisdictions interpreting similar language under section 3—303 have held that attorneys may be holders in due course only to the extent that they have actually performed legal services prior to acquiring a negotiable instrument. See *Coventry Care, Inc. v. United States*, 366 F. Supp. 497, 501-02 (W.D. Penn. 1973); *Fernandez v. Cunningham*, 268 So. 2d 166, 169 (Fla. Dist. Ct. App. 1972); *Korzenik v. Supreme Radio, Inc.*, 347 Mass. 309, 310-11, 197 N.E.2d 702, 703-04 (1964). We agree.

This retainer was a contract for future legal services. Under section 3—303(a)(1), it was a "promise of performance," not yet performed. Thus, no value was received, and Carter is not a holder in due course.

Furthermore, in this case, no evidence was presented in the trial court that Carter performed any legal services for Country Grain prior to receiving the checks. Without an evidentiary basis for finding that Carter received the checks for services performed, the trial court correctly found that Carter failed to prove that it was a holder in due course. See *Coventry Care*, 366 F. Supp. at 501-02; *Fernandez*, 268 So. 2d at 169; *Korzenik*, 347 Mass. at 311, 197 N.E.2d at 704. The trial

court properly granted the Department's motion for summary judgment.

## CONCLUSION

Because we have decided that Carter did not take the checks for value under section 3—303(a) of the UCC, we need not address its other arguments.

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

BRESLIN, J., concurs.

PRESIDING JUSTICE HOLDRIDGE, dissenting:

I respectfully dissent. In a contractual relationship between attorney and client, the payment of a fee or retainer creates the relationship, and once that relationship is created the contract is no longer executory. *Corti v. Fleisher*, 93 Ill. App. 3d 517 (1981). Carter's agreement to enter into an attorney-client relationship with Country Grain was the value exchanged for the checks endorsed over to the firm. Thus, the general rule cited by the majority that "an executory promise is not value" (306 Ill. App. 3d at 1130) does not apply to the case at bar. On that basis I would hold that the trial court erred in determining that Carter was not entitled to the check proceeds and I therefore dissent.