# Illinois Official Reports

## Appellate Court

***Heartland Bank & Trust Co. v. The Leiter Group*, 2014 IL App (3d) 130498**

| | |
|---|---|
| Appellate Court Caption | HEARTLAND BANK AND TRUST COMPANY, Plaintiff-Appellee, v. THE LEITER GROUP, Attorneys and Counselors Professional Corporation, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-13-0498 |
| Rule 23 Order filed | July 29, 2014 |
| Motion to publish granted | September 12, 2014 |
| Modified opinion filed upon denial of rehearing | September 12, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | When a client of defendant law firm transferred accounts receivable checks the client received from its customers to the law firm and the law firm deposited those checks into its IOLTA trust account and then transferred the funds to its general account, the law firm converted the funds and plaintiff bank was deprived of its rightful possession of the proceeds, and summary judgment was properly entered for the bank on its complaint for conversion, notwithstanding the law firm's contention that it properly used the funds to pay for the services it rendered on behalf of its client, since defendant's client had defaulted on the loan agreement it had with plaintiff bank, the bank had filed a third-party citation to discover assets against the law firm, the bank was entitled to the client's accounts receivable at the time payments were made to the client, and the funds were converted at the time they were deposited into the law firm's trust account. |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 11-L-221; the Hon. Richard D. McCoy, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Thomas E. Leiter (argued), of The Leiter Group, of Peoria, for appellant. |
| | Timothy J. Howard and Jeffrey G. Sorenson (argued), both of Howard & Howard Attorneys PLLC, of Peoria, for appellee. |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion. |
| | Justices McDade and Wright concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff Heartland Bank and Trust sued defendant The Leiter Group for conversion, alleging that Leiter converted collateral in which Heartland had a security interest. The trial court granted summary judgment in favor of Heartland. Leiter appealed. We affirm.

¶ 2                                                    FACTS

¶ 3    In March 2006, plaintiff Heartland Bank and Trust issued a revolving line of credit to Ross Advertising in the amount of $650,000. Heartland and Ross executed a promissory note and security agreement. The promissory note listed a number of reasons for default, including dissolution or termination of the business. The note provided for a setoff in all of Ross's accounts at Heartland and authorized Heartland "to charge or setoff all sums owing on this Note against any and all such deposit accounts." The security agreement granted Heartland a secured interest in Ross's collateral, including accounts, instruments, deposit accounts and proceeds from the sale of any collateral. Heartland recorded its secured interest by filing a financing statement in Delaware, where Ross was organized.

¶ 4    The loan was extended in April 2009 for one year and the amount increased to $750,000. Thereafter, a dispute arose between Ross and Heartland regarding the loan. On August 5, 2009, Ross and its longtime legal services provider, defendant The Leiter Group, entered into a contract for legal services. The contract required Ross to pay a $60,000 nonrefundable retainer fee, providing, "Client understands and agrees that the legal issues involved in this matter are complex and that an attorney would not undertake representation without the payment of this retainer." Ross was also required to pay Leiter its usual hourly rate for ongoing legal services as performed. Following the August legal services engagement, Ross began to deliver various checks from its clients for deposit into Leiter's Interest on Lawyers' Trust Accounts (IOLTA) account. From time to time, Ross instructed Leiter to pay Ross's bills and payment was made to a number of vendors, including Heartland and Leiter. The total amount of third-party checks deposited and paid between December 2009 and May 2010 was $120,603.

¶ 5    On September 11, 2009, the Ross shareholders decided to close the business. On September 15, the shareholders notified Heartland that Ross would cease operations on September 30. Heartland immediately terminated Ross's line of credit, placed a hold on its checking account, and applied the proceeds in the Ross checking account to the outstanding loan balance. On October 22, Heartland sent Ross a default notice due to its insolvency and termination of business. The demand requested Ross pay off its loan before November 10, 2009, and notified Ross that it would exercise its rights against the guarantors if Ross was unable to make the payoff. Ross did not repay the loan by the payoff deadline.

¶ 6    On November 19, 2009, Leiter notified Heartland that it received $57,104 as "a retainer on legal fees and expenses" and that the sale of some Ross furniture and equipment netted more than $16,000 with another $2,000 expected from the sale of additional items. Heartland served a third-party citation to discover assets on Leiter in December 2009. Also in December 2009, Heartland filed a complaint and confession of judgment against Ross in Peoria County. The trial court granted summary judgment for Heartland and awarded Heartland $786,479 in damages from the loan default. Ross appealed and this court affirmed. *Heartland Bank & Trust Co. v. Ross Advertising, Inc.*, 2012 IL App (3d) 100774-U.

¶ 7    On May 21, 2010, Heartland made a turnover demand on Leiter, seeking the proceeds of any Ross collateral in Leiter's possession, including the $18,000 furniture sale proceeds. The IOLTA balance for Ross was $3,155 on that day. Leiter's May 31, 2010, invoice for legal services indicated a balance due of $3,679, of which $600 had been earned after Leiter received the turnover order. Leiter paid itself $3,079 out of its IOLTA account and moved the funds into its general account as payment for legal services. In June 2011, Heartland made a demand for $120,603 of Ross proceeds it maintained Leiter converted.

¶ 8    In July 2011, Heartland filed the instant complaint for conversion, seeking, in part, prejudgment interest. Leiter moved to dismiss under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2010)) (Civil Code), arguing that section 9-332(b) of the Illinois Uniform Commercial Code (UCC) (810 ILCS 5/9-332(b) (West 2010)) barred Heartland's claim. The trial court denied Leiter's motions to dismiss and to reconsider, finding section 9-332(b) did not apply and did not bar Heartland's claim. Leiter moved to dismiss under section 2-615 of the Civil Code (735 ILCS 5/2-615 (West 2010)), arguing that Heartland's complaint failed to state a cause of action for conversion and relying again on section 9-332(b) of the UCC. Leiter's second motion to dismiss was heard and denied by the trial court.

¶ 9    Heartland moved for summary judgment. Leiter responded to the motion and attached to its response the affidavits of Thomas Leiter and the firm's bookkeeper. Thomas attested the law firm had represented Ross since 1957, and that between September 2009 and June 2010, Ross deposited various third-party payments into Leiter's IOLTA account. From its IOLTA account, Leiter transferred $107,783 to its general account for the retainer and legal services provided to Ross. No Ross funds remained in the IOLTA account after June 15, 2010. Ross owed Leiter $25,990 as of June 15, 2010, and as of May 20, 2011, Ross had an unpaid balance of $104,969. The bookkeeper attested that the $60,000 retainer fee was paid in two installments in December 2009 from the IOLTA account and that all other withdrawals from the account payable to Leiter were for hourly billings for work performed.

¶ 10    On July 8, 2013, the trial court granted Heartland's summary judgment motion, finding that Heartland had a security interest in the third-party checks payable to Ross; Ross deposited

checks in the amount of $120,603 in Leiter's IOLTA account; Leiter was not a holder in due course; Leiter had notice that Ross's delivery of its checks to the IOLTA account was unauthorized; Leiter was not a transferee under section 9-332 of the UCC; and Heartland was entitled to prejudgment interest. The trial court entered judgment for Heartland in the amount of $120,603, plus costs and prejudgment interest at the rate of 5% per annum from the date each converted check was deposited into the Leiter IOLTA account. Leiter filed its notice of appeal on July 9, 2013. On July 24, 2013, Heartland filed a motion to amend the judgment with the fixed amount of prejudgment interest. The trial court entered an order on August 29, 2013, calculating the prejudgment interest owed by Leiter to Heartland to be $22,093.

¶ 11                                                    ANALYSIS

¶ 12        Leiter argues that the trial court erred in granting summary judgment in favor of Heartland and asks this court to reverse and enter judgment in its favor. Before we address Leiter's argument, we must determine Heartland's challenge to our jurisdiction. Heartland submits that the order granting summary judgment was not final and appealable because Heartland filed a motion to modify the judgment to include the amount of prejudgment interest after Leiter filed a notice of appeal.

¶ 13        The appellate court has jurisdiction to hear an appeal of a final judgment. Ill. Const. 1970, art. VI, § 6; *Gardner v. Mullins*, 234 Ill. 2d 503, 510 (2009). A party may appeal any final judgment as a right under Supreme Court Rule 301. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); *Gardner*, 234 Ill. 2d at 510. The filing of a notice of appeal is jurisdictional and must be filed within 30 days of final judgment or within 30 days after an order is entered "disposing of the last pending postjudgment motion directed against that judgment or order." Ill. S. Ct. R. 303(a)(1) (eff. May 30, 2008). A postjudgment motion is one that requests a rehearing, retrial, modification or vacation of the judgment and must be " 'directed against the judgment.' " *Miller v. Penrod*, 326 Ill. App. 3d 594, 596 (2001) (citing *Giammanco v. Giammanco*, 253 Ill. App. 3d 750, 755 (1993)). When a postjudgment motion has been filed after the notice of appeal, the notice of appeal becomes effective when the order disposing of the postjudgment motion has been entered. Ill. S. Ct. R. 303(a)(2) (eff. May 30, 2008). Whether this court has jurisdiction is an issue of law we decide *de novo*. *Gardner*, 234 Ill. 2d at 508.

¶ 14        We find that we have jurisdiction to hear the appeal. The posttrial motion filed by Heartland sought to add the calculated amount of prejudgment interest to the judgment order. It was not directed against the judgment but merely sought a calculation of the prejudgment interest already awarded by the trial court. Heartland's motion, although titled a "motion to modify," was a motion to satisfy the judgment and did not attack or challenge the judgment. *Star Charters v. Figueroa*, 192 Ill. 2d 47, 48 (2000) (motion for setoff was not postjudgment motion directed against the verdict but sought to satisfy the judgment); *Moenning v. Union Pacific R.R. Co.*, 2012 IL App (1st) 101866, ¶ 35 (motions for enforcement of order and for release of judgment did not attack or challenge judgment and were not postjudgment motions divesting the appellate court of jurisdiction). The summary judgment order resolved all issues between the parties. The trial court granted prejudgment interest when it entered the summary judgment order, but the calculated amount was not included in the order. Heartland's postjudgment motion and the trial court's subsequent order awarding a specific amount of prejudgment interest did not affect appellate court jurisdiction.

¶ 15        Having determined that our jurisdiction is proper, we turn to Leiter's argument that the trial court erred when it granted summary judgment in favor of Heartland. Leiter argues that the trial court reached erroneous conclusions of facts and law, which made summary judgment improper. It challenges the trial court's findings that Leiter converted Heartland's security interest, that Leiter was not a holder in due course, and that Leiter was not a transferee who took the funds from Ross free of Heartland's security interest.

¶ 16        Summary judgment is proper when the pleadings, depositions, admissions on file and affidavits, if any, show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010). Summary judgment should be granted only when the movant's right is clear and free from doubt. *Jackson v. TLC Associates, Inc.,* 185 Ill. 2d 418, 424 (1998). This court reviews a trial court's grant of summary judgment *de novo*. *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 238 Ill. 2d 455, 461 (2010).

¶ 17        An instrument is converted when taken by transfer, not negotiation, from its owner by a person who is not entitled to enforce the instrument. 810 ILCS 5/3-420(a) (West 2010). The elements of conversion include: (1) an unauthorized and wrongful assumption of control, dominion, or ownership by a person over the personalty of another; (2) his right to the property; (3) his right to immediate, absolute and unconditional possession of the property; and (4) a demand for possession of the instrument. *Mid-America Fire & Marine Insurance Co. v. Middleton*, 127 Ill. App. 3d 887, 891 (1984). "The essence of an action for conversion is the wrongful deprivation of property from the person entitled to possession." *Farns Associates Inc. v. Sternback*, 77 Ill. App. 3d 249, 252 (1979).

¶ 18        A security interest attaches when it becomes enforceable against the debtor. 810 ILCS 5/9-203(a) (West 2010). The security interest is enforceable when (1) it was given for value; (2) the debtor has rights in the collateral; and (3) there is a security agreement describing the collateral. 810 ILCS 5/9-203(b)(3)(A) (West 2010). A security interest attaches when the debtor obtains rights in its accounts receivable. *Farns Associates, Inc. v. South Side Bank*, 93 Ill. App. 3d 766, 769 (1981).

¶ 19        Contrary to Leiter's argument, Ross did not properly negotiate its accounts receivable checks to Leiter. Ross and Heartland executed a security agreement in March 2006. The agreement allowed Heartland a secured interest in various collateral upon default. Under the terms of the loan, cessation of business operations triggered a default by Ross and the protections of the security interest for Heartland. At the time the checks were deposited in Leiter's IOLTA account, Heartland's security interest had attached and it was entitled to the checks. There is no dispute that Ross received value in the form of a $750,000 line of credit from Heartland in exchange for assigning Heartland a security interest in its collateral, including Ross's deposit account at Heartland and the proceeds from its accounts receivable. It is also undisputed that Ross had rights in its accounts receivable and other collateral and granted Heartland a security interest in the collateral per the security agreement. Accordingly, at the time Ross endorsed the checks to Leiter's IOLTA account, Heartland's security interest had attached and the checks were not negotiable without the security interest.

¶ 20        This same reasoning applies to and defeats Leiter's assertion that the converted funds remained Ross's funds while held in Leiter's IOLTA account. Leiter asserts that the funds Heartland alleged it converted were IOLTA account funds that belonged to Ross and that the

trial court disregarded Rule 1.15 of the Illinois Rules of Professional Conduct of 2010 (eff. Jan. 1, 2010) in finding a conversion.

¶ 21 Rule 1.15 requires attorneys to hold clients' property in an IOLTA account separate from the lawyers' property. Ill. R. Prof. Conduct (2010) R. 1.15(a) (eff. Jan. 1, 2010). A lawyer may not commingle his funds with his clients' property. *Dowling v. Chicago Options Associates, Inc.*, 226 Ill. 2d 277, 287 (2007). A classic or general retainer, which a client pays a lawyer to ensure his or her availability, is considered earned when paid and immediately becomes the lawyer's property. *Dowling*, 226 Ill. 2d at 286

¶ 22 The affidavits of Thomas Leiter and the law firm's bookkeeper avowed that Leiter was paid the $60,000 classic retainer in two installments in December 2009 and that all the other payments to Leiter from the IOLTA account were for hourly legal services performed. When Ross defaulted on its loan in September 2009, Heartland was entitled to the proceeds Ross collected from its accounts per the security agreement. Thus, the proceeds from the Ross checks deposited into the IOLTA account belonged to Heartland at the time of deposit. There are no facts to support Leiter's assertion that the trial court misunderstood the nature of the IOLTA account and failed to acknowledge the requirements of Rule 1.15.

¶ 23 Leiter also asserts that the trial court incorrectly determined that it was not a holder in due course entitled to take Ross's proceeds free from Heartland's security interest and precluding Heartland's claim for conversion.

¶ 24 The holder of an instrument is a holder in due course if:

"(1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity, and

(2) the holder took the instrument (i) for value, (ii) in good faith, *** (v) without notice of any claim to the instrument described in Section 3-306 [(810 ILCS 5/3-306 (West 2012))] ***." 810 ILCS 5/3-302(a)(1)-(2) (West 2012).

A person who takes an instrument is subject to a property claim; however, "[a] person having rights of a holder in due course takes free of the claim to the instrument." 810 ILCS 5/3-306 (West 2010). A lawyer may be a holder in due course only to the extent that they have actually performed legal services prior to acquiring a negotiable instrument. *Carter & Grimsley v. Omni Trading, Inc.*, 306 Ill. App. 3d 1127, 1130 (1999).

¶ 25 The trial court determined that Leiter was not a holder in due course because it had notice of Heartland's claim; it did not take the instruments for value; and it had notice that Ross's delivery of the checks was unauthorized based on the default provisions of the security agreement. We agree. Leiter argues that it gave value for Ross's payment of the retainer and fees for hourly legal services and properly earned the fees it received from the IOLTA account. Leiter transferred the $60,000 retainer from its IOLTA account to its general account in December 2009 and thereafter paid itself for the hourly legal services it provided Ross. However, as discussed above, Heartland's security interest attached before the third-party checks were deposited into the IOLTA account. Leiter was not entitled to the funds and thus did not take them for value.

¶ 26 Additionally, Leiter did not act in good faith and without notice of Heartland's claim. Leiter was aware when Ross deposited the third-party checks into Leiter's IOLTA account that Heartland had a secured interest in the proceeds. Ross had specially engaged Leiter, its

long-term counsel, to represent it in its dispute with Heartland regarding Ross's loan default. Leiter also had notice of Heartland's security interest because Heartland recorded it. In addition, Heartland provided notice of Ross's default in October 2009, and filed a third-party citation against Leiter in December 2009. Because Leiter cannot establish as a matter of law that it was a holder in due course, it was subject to Heartland's security interest.

¶ 27    Lastly, Leiter claims it is a transferee who takes the funds free from Heartland's security interest. It challenges the trial court's findings that it was not a section 9-332 transferee and that it colluded with Ross to Heartland's detriment.

¶ 28    Section 9-332 of the UCC provides that a "transferee of funds from a deposit account takes the funds free of a security interest in the deposit account unless the transferee acts in collusion with the debtor in violating the rights of the secured party." 810 ILCS 5/9-332(b) (West 2010).

¶ 29    We find that this provision does not apply under the instant facts. Heartland's security interest had attached before the funds were deposited into the IOLTA account. "Transferee" is not defined in this article of the UCC, but the comments to section 9-332 suggest that it refers to a debtor's deposit account and would not be applicable to Leiter's IOLTA account. See 810 ILCS Ann. 5/9-332, Uniform Commercial Code Comment 2 (Smith-Hurd 2004). The trial court's finding that Leiter was not protected from Heartland's security interest under section 9-332(b) was not in error.

¶ 30    The trial court found that Leiter converted the accounts receivable proceeds when it deposited the checks into its IOLTA account. We agree. Heartland was deprived of its rightful possession of the Ross proceeds. It was not a holder in due course or a section 9-332 transferee entitled to take free of Heartland's security interest. Heartland called the loan in September 2009 and judgment was entered in its favor and against Ross on the loan default in September 2010. Heartland also filed a third-party citation to discover assets against Leiter in December 2009 and May 2010. Because the security interest attached in September 2009, when Ross defaulted, Heartland was entitled to the Ross proceeds on their payment to Ross. The deposit of the accounts receivable checks into Leiter's IOLTA account was a conversion of the Ross proceeds. Because there are no genuine issues of material fact that Leiter converted Heartland's security interest, Heartland was entitled to judgment as a matter of law. The trial court did not err in granting summary judgment in Heartland's favor.

¶ 31    For the foregoing reasons, the circuit court of Peoria County is affirmed.

¶ 32    Affirmed.